Louis **REDINGER**, Petitioner,

v.

**LIVING, INC.**, Respondent.

No. C–2962.

Supreme Court of Texas.

May 8, 1985.

Helm, Pletcher and Hogan, Stephen W. Hanks, Houston, for petitioner.

Baker and Botts, Elaine B. Bristow, Houston, for respondent.

CAMPBELL, Justice.

Louis Redinger sued Living, Inc., the general contractor, and Bobby Baird, an independent contractor, for damages resulting from an injury to Redinger's finger. The trial court rendered judgment for Redinger based on jury findings that Baird was fifty percent negligent and that Living, Inc. was fifty percent negligent. The court of appeals reversed the trial court judgment because of jury misconduct, and remanded the cause for a new trial. 667 S.W.2d 846. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Living, Inc. was the general contractor on the building construction site. Bobby Baird was the dirt hauling subcontractor, and Redinger was an employee of a plumbing subcontractor. David Yargo, the superintendent for Living, Inc., was preparing the site for a subcontractor to pour concrete. When the concrete trucks arrived, piles of dirt placed by Baird blocked the route to the work area. Yargo ordered Baird to move the dirt. As he was moving the dirt, the box blade of his tractor crushed Redinger's left index finger.

The jury refused to find that Redinger was negligent for failing to keep a lookout. However, the jury found that Living, Inc. was fifty percent negligent in allowing Bobby Baird to operate his tractor while Louis Redinger and others were working in the area and also for failing to warn.

Living, Inc. and Redinger bring applications for writ of error to this court. Living, Inc. contends the court of appeals erred in failing to render judgment that Redinger take nothing against it because Living, Inc., a general contractor, does not have a duty to Redinger, an employee of a subcontractor. Redinger contends the court of appeals erred in remanding the cause for a new trial because of jury misconduct.

We will first consider whether a general contractor has a duty to a subcontractor's employee, and, if so, whether there is evidence in this case that the duty was breached. An owner or occupier of land has a duty to use reasonable care to keep the premises under his control in a safe condition. *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425 (1950). A general contractor on a construction site, who is in control of the premises, is charged with the same duty as an owner or occupier. *Id.* 226 S.W.2d, at 431. This duty to keep the premises in a safe condition may subject the general contractor to direct liability for negligence in two situations: (1) those arising from a premises defect, (2) those arising from an activity or instrumentality. *J.A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.); *Moore v. Texas Company*, 299 S.W.2d 401 (Tex.Civ.App.—El Paso 1956, writ ref'd n.r.e.). This is not a premises defect case. Rather, this case involves an injury caused by an activity conducted on the premises.

■ The general rule is that an owner or occupier does not have a duty to see that an independent contractor performs work in a safe manner. *Abalos v. Oil Development Co.*, 544 S.W.2d 627 (Tex.1976). ... [W]here the activity is conducted by, and is under the control of, an independent contractor, and where the danger arises out of the activity staff, the responsibility or duty is that of the independent contractor, and not that of the owner of the premises. *Id.* at 631 (*citing Shell Chemical Company v. Lamb*, 493 S.W.2d 742 (Tex.1973)).

However, when the general contractor exercises some control over a subcontractor's work he may be liable unless he exercises reasonable care in supervising the subcontractor's activity. We adopt the rule enunciated in the Restatement (Second) of Torts:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1977).

Several other states follow the Restatement of Torts. *See, e.g. Everette v. Alyeska Pipeline Service Co.*, 614 P.2d 1341 (Alaska 1980); *Conover v. Northern States Power Co.*, 313 N.W.2d 397 (Minn.1981); *Stepanek v. Kober Construction*, 625 P.2d 51 (Mont.1981); *New Mexico Electric Service Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976); *Skalos v. Higgins*, 303 Pa.Super. 107, 449 A.2d 601 (1982); *Kelley v. Howard S. Wright Construction Co.*, 90 Wash.2d 323, 582 P.2d 500 (1978).

■ This rule applies when the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master. Restatement (Second) of Torts § 414, comment a (1965). The employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports. *Id.*, comment c (1965).

> He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

*Id.*, comment a (1965).

■ There is evidence that Living, Inc. retained the power to direct the order in which the work was to be done and to forbid the work being done in a dangerous manner. When the concrete trucks arrived at the site, Yargo ordered Baird to immediately move the dirt to another location. Yargo exercised supervisory control by coordinating the work performed by two subcontractors. Living, Inc. owed a duty to Redinger to exercise this supervisory control in a reasonable manner.

There is evidence that Living, Inc. negligently exercised this control. The dirt was located within one to five feet of an area where Redinger and employees of other subcontractors were working. While Baird was moving the dirt, his back-hoe operated within one to five feet of Redinger and the other workers. There is evidence to support the jury finding that Living, Inc. was negligent in allowing Bobby Baird to operate his tractor while Redinger was working in the area and in failing to warn Redinger. We agree with the court of appeals that Living, Inc. owed a duty to Redinger to exercise reasonable care.

Redinger contends that the court of appeals erred in remanding this cause for a new trial because of jury misconduct. Five jurors testified at a hearing on motion for new trial that during deliberations they discussed liability insurance, Baird's financial ability to pay his share of the judgment, and how the attorneys would be paid.

To obtain a new trial on the basis of jury misconduct, the complaining party must show: (1) that the misconduct occurred, (2) that it was material, and (3) that, based on the record as a whole, the misconduct probably resulted in harm to them. *Flores v. Dosher,* 622 S.W.2d 573 (Tex.1981). Tex.R.Civ.P. 327.[1] The complaining party has the burden to prove all three elements before a new trial can be granted. *Fountain v. Ferguson,* 441 S.W.2d 506 (Tex.1969).

Living, Inc. has failed to discharge this burden. It is unnecessary to consider the first two elements because we conclude that even if there was material jury misconduct, there was no probable injury to Living, Inc.

To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he "would otherwise have done on one or more issues vital to the judgment." *Mrs. Baird's Bread Co. v. Hearn,* 157 Tex. 159, 300 S.W.2d 646, 649 (1957). There is no probable injury when "the evidence is such that ... the jury would in all probability have rendered the same verdict that was rendered here, ..." *Fountain,* 441 S.W.2d at 508 (*quoting Lumbermen's Lloyd's v. Loper,* 153 Tex. 404, 269 S.W.2d 367 (1954)).

The jury in all probability would have rendered the same verdict regardless of whether there was material jury misconduct. The jurors testified that when they reached the damages issue a preliminary vote was taken to determine how many were in agreement as to the amount of damages. Ten jurors voted to award $125,-000 to Redinger and two jurors disagreed. A verdict could have been rendered if the same ten jurors had agreed on all previous issues. Tex.R.Civ.P. 292. However, one of the jurors who agreed with the other nine on the damages issue had disagreed on a previous issue.

After a vote was taken on the damages issue, they discussed various subjects all related to the amount of damages Redinger should be awarded. The two jurors who disagreed with the majority on the damages issue refused to change their vote and never signed the verdict.

However, the juror who agreed with the majority on the damages issue changed his vote on a previous issue not related to damages. Therefore, the same ten members of the jury agreed on answers to all the issues and a verdict was reached. Tex. R.Civ.P. 292. The discussions regarding damages did not cause probable injury because the ten jurors who voted to award Redinger $125,000 were the same jurors who signed the verdict.

Living, Inc. relies on *White Cabs v. Moore,* 146 Tex. 101, 203 S.W.2d 200 (1947), and argues that a discussion of attorney's fees alone mandates a reversal based on jury misconduct. However, in *White Cabs,* this court emphasized there was evidence of probable injury. An initial vote was taken in that case in which five jurors voted to award $20,000, five to award $15,-000 and one to award $17,500. The discussions took place after the initial vote and prior to the final official vote on the damages issue. When the final vote was taken, all the jurors agreed to an award of $16,-000. This court noted that it would be improper to ask the jurors who initially voted for $15,000 whether the discussions influenced their decisions because it would be inquiring into their mental processes. "But we believe that the reasonable conclusion from the testimony of the jurors and from the entire record is that they were probably inclined by that discussion to agree to the answer that was made." *Id.* at 202. In contrast, the reasonable conclusion from the jurors' testimony and the record in this case is that the jurors' discussions relating to damages did not affect the verdict.

**1.** Tex.R.Civ.P. 327 was amended by order of December 5, 1983. This case was litigated prior to the 1983 amendment.

We hold that the court of appeals erred in reversing the trial court judgment and remanding the cause for a new trial because of jury misconduct. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.