**Linda GROVER, et al., Plaintiffs-Appellants,**

**and**

**Employers National Insurance Company, Intervenor-Appellant,**

**v.**

**GULF STATES UTILITIES COMPANY, et al., Defendants,**

**Commonwealth Associates, Defendant-Appellee.**

**No. 84-2427.**

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1985.

Maughan, Atkinson & Martin, Ltd., Roy Maughan, Baton Rouge, La., for Grover.

Mehaffy, Weber, Keith & Gonsoulin, Arthur R. Almquist, Beaumont, Tex., for Employers National.

Benckenstein, Norvell, Bernsen & Nathan, David Eric Bernsen, Beaumont, Tex., for Com.

Before CLARK, Chief Judge and THORNBERRY, and EDITH HOLLAN JONES, Circuit Judges.

## OPINION

CLARK, Chief Judge:

Plaintiff-appellants, the widow and minor child of the decedent, brought this wrongful death action against a number of defendants, including Commonwealth Associates (Commonwealth). Commonwealth is a Michigan corporation while plaintiffs are citizens of Louisiana. Jurisdiction is based on diversity of citizenship and the requisite jurisdictional amount. 28 U.S.C.A. § 1332. All defendants except Commonwealth settled or were otherwise dismissed before trial. Appellants appeal from a jury verdict in Commonwealth's favor. They argue that the district court erred in improperly commenting on an ultimate question of fact that was to be considered by the jury and in failing to give certain requested instructions. Since we conclude that Commonwealth owed no legal duty to the decedent, we affirm without reaching these assignments of error.

### I

The decedent was killed while working for Universal Electric Construction Company (Universal) as a high voltage power line installer at a job site in Huntsville, Texas. Universal had a contract with Gulf States Utilities (Gulf States) to set up new poles along an existing power line and transfer all service from the old poles to the new

poles. Universal used two crews to perform the work. A "transmission" crew would set up new poles adjacent to old ones and transfer to the new poles the high voltage lines used to transmit power between principal locations. A "distribution" crew, which included decedent, then transferred to the new poles lower voltage lines used to distribute power to intermediate locations and cleaned up.

Commonwealth, a consulting company, contracted with Gulf States to inspect and approve Universal's work. Its representative, Chuck Grace, inspected the lines each day. Before the Universal crews commenced work, they would wait for his daily report stating that a device called the reclosure was in the "one shot" position, meaning that it would cut off the power if a fault developed on any line. The reclosure was a device to prevent excessive current loss in the event of a short. The Universal crews apparently believed, falsely, that the reclosure served a safety purpose by protecting workers from serious injury in the event of accidental contact with energized lines.

Prior to the fatal accident, the transmission crew had installed temporary "jumpers" on the old poles to reroute some electrical connections. One permanent jumper was left partially coiled on an insulator at the end of a cross arm. The transmission crew had not removed it because they thought it might be needed for some purpose by the distribution crew. The members of the distribution crew, including the acting foreman, were aware of the danger presented by the coiled permanent jumper and intended to remove it on the day of the accident. Before removal, however, the decedent, while engaged in a difficult operation, accidentally touched the coiled permanent jumper with his right elbow and was electrocuted.

## II

Under Texas law, appellants are not entitled to recover in tort from Commonwealth unless they can establish that Commonwealth violated a legal duty it owed to the decedent. *Abalos v. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex. 1976). Appellants claim that Commonwealth undertook such a duty when it agreed by contract to inspect the work of Universal's crews to see that it was safely done. The breach of a contractual duty can, under Texas law, give rise to a tort. *UMC, Inc. v. Coonrod Elec. Co., Inc.*, 667 S.W.2d 549, 558 (Tex.Civ.App.1983). Appellants argue that Commonwealth breached its duty when Grace failed to order the removal of the coiled permanent jumper which, as Grace and other witnesses testified, posed an unnecessary safety hazard.

The difficulty with appellants' position is that, as the uncontradicted record shows, Commonwealth's only duty was to inspect the completed work of Universal (i.e., the new poles and wiring) to determine if it met Gulf States' specifications. Commonwealth did not have the duty of supervising or directing the work of Universal and therefore was not required to direct the Universal crew to remove the coiled permanent jumper. *See UMC, supra,* 667 S.W.2d at 558 (duty to maintain equipment does not include duty to warn of design defects); *see also Hartford Steam Boiler Inspection & Ins. Co. v. Cooper,* 341 So.2d 665, 667 (Miss.1977) (insurance company's right to inspect equipment was for its own benefit and did not create a duty to inspect for the benefit of third persons). Commonwealth's contract specifically stated that Grace was not responsible for safety precautions. There is no evidence that Grace had the authority to direct safety practices or correct safety violations. It is true that the contract *allowed* Grace to "request the contractor to increase ... safety," but this provision was clearly not intended to place him under any duty with respect to safety.

Even if we were to hold that Grace was under a duty to inform the Universal crews of any safety defect, such a duty could not be the basis of liability here because the Universal foreman already was aware of the danger posed by the coiled permanent jumper he knew was fully energized. *UMC, supra,* 667 S.W.2d at 558. Since

Grace neither had a contractual duty to supervise safety nor assumed any such duty in the course of his performance, the mere fact that the Universal crews may have incorrectly assumed that Grace's reclosure report was a safety procedure did not create any duty on Grace's part.

Appellants cite the Texas Supreme Court's recent decision in *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985), as establishing a tort duty in the situation presented here. *Redinger* involved an injury to the employee of a plumbing subcontractor by a dirt hauling subcontractor of the same general contractor. The employee sued the general contractor for negligence in supervising the activity of the dirt hauling subcontractor. The Texas Supreme Court noted that the general rule is that an employer does not have a duty to see that an independent contractor performs work safely. However, the Court held that "when the general contractor exercises some control over a subcontractor's work he may be liable unless he exercises reasonable care in supervising the subcontractor's activity." *Id.* at 418.

An obvious distinction between *Redinger* and the instant case is that the defendant here is not a general contractor but rather a fellow independent subcontractor. Appellants, however, would apparently have us extend *Redinger* to an independent subcontractor which, on behalf of an employer, exercises control that, if it were exercised by the employer itself, would be sufficient to trigger the *Redinger* rule. We need not speculate as to whether the Texas courts would accept such an extension of *Redinger.* In this case Commonwealth did not have the control required by *Redinger.* Such control "must be more than a general right to order the work to start or stop, to inspect progress or receive reports." *Id.* Commonwealth's "control" was merely the right to inspect the completed work to see if it met the contract requirements. Unlike the general contractor in *Redinger,* Grace did not have the authority to "direct the order in which the work was to be done and to forbid the work being done in a dangerous manner." *Id.* Thus, Commonwealth owed no legal duty to the decedent.

III

Since Commonwealth was under no legal duty to the decedent, it was entitled to a verdict in its favor as a matter of law. The district court's judgment is therefore AFFIRMED.