Crisoforo CASTRO and Yolanda Castro, Individually and as Next Friends of Lorena Castro, Magnolia Castro, Christian Castro, Jose Armando Castro, Minors, Plaintiffs,

v.

Matias SERRATA, Pedro Saucedo, and J. Rick Day, Defendants.

No. Civ.A. L–98–103.

United States District Court,
S.D. Texas,
Laredo Division.

Sept. 18, 2000.

Luciano Adrian Rodriguez, Laredo, TX, mediator pro se.

Rolando Luis Leon, Baker Leon et al, Corpus Christi, TX, David Lee McGee, Corpus Christi, TX, for Crisoforo Castro, Yolanda Castro, Lorena Minor, Christian Castro, Jose Armando Castro.

Matias Serrato, Tilden, TX, defendant pro se.

Robert Narvell Carnahan, Attorney at Law, Corpus Christi, TX, Humberto G Garcia, Curney Garcia, San Antonio, TX, for J Rick Day, defendant.

## MEMORANDUM AND ORDER

KAZEN, Chief Judge.

Pending is a Motion for Summary Judgment by Defendant J. Rick Day (Docket No. 55). The basic facts of the case are as follows. On August 4, 1998, Plaintiff Cristoforo Castro was injured when his shoelace was caught in an auger being used to dig holes in the ground for fence posts. Castro's injury was so severe that his leg was later amputated at the knee. At the time of the incident, he was employed by Matias Serrata, who in turn had been hired by J. Rick Day to build a fence on property that Day was leasing for grazing.[1] Although Plaintiffs' Complaint refers to Matias Serrata as "foreman," there appears to be no serious dispute that Serrata was an independent contractor overseeing his own employees. For example, Plaintiffs acknowledge that Defendant Day's foreman Xavier Gonzales administered the bidding process that resulted in hiring Serrata (Docket No. 58). Rather, the central issue appears to be whether Day exercised sufficient supervisory power over the building of the fence to incur liability for Castro's injury. Plaintiffs also claim that Day is liable due to his "negligent hiring/retention of a contractor and peculiar risk based upon § 411 and § 413 of the Restatement Second of Torts."

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, an-

---

1. In his deposition, Serrata denies that he ever employed Castro, who is apparently an undocumented alien. For the purposes of this summary judgment motion, the Court will assume that Castro was in fact hired by Serrata to work on the fence building project for Day.

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment must initially demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This showing can be made by relying on discovery material or the pleadings or by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. If the movant meets his burden, the nonmovant cannot simply rest on its pleadings but must identify specific facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated allegations, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam) (citations and internal quotation marks omitted).

## NEGLIGENT SUPERVISION CLAIM

■ Under Plaintiffs' negligent supervision theory, they must prove that Day exercised some control over Serrata's work, did not exercise reasonable care in supervising Serrata's activities, and that Plaintiff's injuries were proximately caused by Day's negligence. *Clayton W. Williams Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex.1997); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985) (adopting the rule enunciated in the Restatement (Second) of Torts § 414 (1977)). As a general rule, an owner or occupier does not have a duty to see that an independent contractor performs work in a safe manner. *Redinger*, 689 S.W.2d at

418. However, the owner/occupier may be subject to liability if he retains some control over the manner in which the independent contractor's work is performed. *Id.* Plaintiffs allege that Day exercised supervisory control through visits to the worksite by his foreman, Xavier Gonzales, or at a minimum *retained* the right to exercise such control so as to subject himself to liability in this matter.

■ To be liable for negligent supervision, the employer's role must be more than a general right to order the work to start or stop, to inspect progress, or receive reports. *Redinger*, 689 S.W.2d at 418. "For the general contractor to be liable for negligence, its supervisory control must relate to the condition or activity that caused the injury." *Williams*, 952 S.W.2d at 528. Furthermore, the Supreme Court of Texas recently held that merely placing a "safety employee" on the worksite to observe and make recommendations is insufficient to hold the owner/operator liable for an injury to an employee of the independent contractor. *Koch Refining Company v. Chapa*, 11 S.W.3d 153, 156 (Tex.1999). The *Koch* decision gives owner/operators "some latitude to tell its independent contractors what to do, in general terms" without being subject to liability. *Id.* at 156. The *Koch* court added that "[a]n employee's 'willingness to follow a premises owner's instructions, though no such instructions were given,' does not constitute legally sufficient evidence of the premises owner's right to control such that a duty arises." *Id.* citing *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex.1999). Here, the evidence shows that while the independent contractor's employees may have believed that Day or his representative, Xavier Gonzales, was exerting authority or control, Gonzales' visits to the worksite were merely to inspect the progress of

the work and determine what supplies were needed. Both Gonzales and Serrata so testified in their depositions.[2]

Furthermore, absent some clear actual exercise of control, the Plaintiffs must rely on the *contractual retention* of control by the Defendant to create the duty of care adopted in *Redinger. Pollard v. Missouri Pacific Railroad, Co.*, 759 S.W.2d 670 (Tex.1988) (per curiam). There is no evidence that Day had the contractual right to control the specific activities of fence building, nor is there evidence that he actually exercised control himself or through Gonzales. The only individuals who testified that Gonzales acted like a supervisor were Castro and Remigio Moreno Moreno, who were not party to any of the conversations between Gonzales and Serrata. They testified in their depositions that they did not even overhear any of those conversations, but that they believed Gonzales to be in control based on his visits to observe the worksite.[3] Such subjective belief, without more, is insufficient. It is undisputed that Gonzales assisted in the procurement of building materials, but Serrata provided his own men

2. "Q. [by McGee] And you periodically checked on them to see that they were building the fence in the proper manner?

A. No, just to where it was at. I mean, just build the fence and if they needed supplies and I'm on my way back and forth through the ranch." Deposition of Xavier Gonzales, p. 86

"Q. [by McGee] Did—did Gonzales—did Gonzales change anything once you started on the fence that—did he change anything, like he decided that he wanted the posts set different spacing or anything along that line?

A. No." Deposition of Matias Serrata, p. 33–34.

3. "Q. [by McGee] Did [Xavier Gonzales] ever talk to Matias about the building of the fence or anything about the fence, to the best of your knowledge?

A. I never really saw him up close, and since we were working most of the time where they told us to work." Deposition of Remigio Moreno Moreno, p. 11

"Q. [by McGee] Okay. But do you recall this gentleman's name that came out to talk to Mr. Serrato?

A. No., I don't even know what his name was because I never asked. All I know is that I would see him and I was told that he was working with him." Deposition of Remigio Moreno Moreno, p. 13.

"Q. [by McGee] .... The other individual that would come out to where you were building the fence, who are you talking about?

A. This other man that came over he would always talk with Mr. Matias, but we would never listen to what they would talk about." Deposition of Cristoforo Castro, p. 32

"Q. [by McGee] Okay. Well, when he would come by or whenever he would point to the work that you were doing, would you-all occasionally change the way you were doing the work or go back and correct something else?

A. No, we would just go on with your job, and on some occasions we would change place to where he would point out." Deposition of Cristoforo Castro, p. 33.

"Q. [by Carnahan] When Mr. Gonzalez came, did he say—did he tell anybody that they should get up on this?

A. No. Mr. Gonzalez never had anything to say to us.

Q. Did he ever talk to you five guys at all?

A. No.

Q. Did you ever meet him or shake hands?

A. No.

Q. You just saw him come out sometimes?

A. I would see him when he would talk with Mr. Matias, but that was not—it was not right where we were working, just a bit far away from where we were.

Q. And Mr. Gonzalez had to tell Mr. Matias where to put the fence?

A. Yes.

Q. And he would tell him that and check and make sure he was going the right direction?

A. Mr. Gonzalez, no. It was really Mr. Matias that would tell us where everything should go." Deposition of Crisoforo Castro, p. 78.

and his own equipment used on the job, including the auger. Gonzalez told Serrata where the fence was to be built, but never how the fence was to be built. Summary judgment for the Defendant Day on the negligent supervision theory is proper.

### NEGLIGENT HIRING AND PECULIAR RISK CLAIM

In response to Defendant's motion (Docket No. 58), Plaintiffs filed and the Court granted a Motion for Leave to Amend the Complaint (Docket No. 64). Plaintiffs' Fifth Amended Complaint (Docket No. 65) was then filed, adding the new claims of negligent hiring/retention and invoking the doctrine of "peculiar risk."

### A. Negligent Hiring/Retention

 Texas recognizes a cause of action for the negligent hiring of an independent contractor. *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 789 (Tex. App.—El Paso 1996, writ denied); *King v. Associates Commercial Corp.*, 744 S.W.2d 209, 213 (Tex.App.—Texarkana 1987, writ denied); *Jones v. Southwestern Newspapers Corp.*, 694 S.W.2d 455, 457–58 (Tex. App.—Amarillo 1985, no writ); *Texas American Bank v. Boggess*, 673 S.W.2d 398, 400–01 (Tex.App.—Fort Worth 1984, writ dism'd by agr.). "One hiring an independent contractor may be held responsible for the contractor's negligent acts if the employer knew or should have known that the contractor was incompetent and a third person was injured because of the contractors's incompetency." *King*, 744 S.W.2d at 213; citing (*Boggess*, 673 S.W.2d at 400). However, in all these cases, the employer of an independent contractor is held liable to a "third person," not the independent contractor's own employees.

It is unclear under Texas law whether an independent contractor's employee can be a "third person" under this doctrine. Plaintiffs point to the case of *Bowles, et al v. White Oak, Inc., et al,* 1988 WL 97901 (Del.Super.Ct.). That court concluded that the drafters of § 411 of the Restatement (Second) of Torts (Negligence in Selection of Contractor) left the meaning of "third persons" and "others" undefined in order for each state to interpret the exceptions themselves. *Id.* at *2. The *Bowers* Court further concluded that the "employer's duty to act reasonably in selecting an independent contractor runs to the employees of the independent contractor." *Id.* at *3. The court opined that "such a rule would not be unduly burdensome, since it requires no additional effort of the employer who is already duty bound to act reasonably in the selection process to protect other third parties from harm." *Id.*

On the contrary, at least one Texas appellate court case reached the opposite result. In *Simonton v. Perry, et al.*, 62 S.W. 1090, 1090 (Tex.Civ.App.—Houston 1901, no writ), the Plaintiffs brought a negligence suit against an employer of an independent contractor for damages for a minor's personal injuries. Plaintiffs alleged that there was evidence that the employer knew of the independent contractor's propensity for hiring young boys to assist him in his construction work. *Id.* at 1091. The *Simonton* Court held that "[i]t may be true that if a person employs a negligent or reckless contractor, knowing his character, and in the performance of his contract he negligently or recklessly injures a third person, a cause of action might arise against the owner; but this rule cannot be applied as between the owner and the servants of the contractor." *Id.*

More recently, however, the Supreme Court of Texas at least implied in *Pollard*

that such a cause of action by an employee of the independent contractor against the general contractor might be available. *Pollard,* 759 S.W.2d at 670. There the injured employee had alleged that "MOPAC was negligent for employing an inexperienced contractor without inquiring into his experience and safety record." *Id.* Because these allegations were not addressed by MOPAC in its motion for summary judgment nor by the court of appeals, the Supreme Court found that a genuine issue of material fact remained. The Court finds the law on this point to be unclear. Because the Defendant, as movant, has not fully briefed this point nor adequately discussed the factual bases which might defeat such a claim, summary judgment is premature.

**B. Peculiar Risk**

 It appears clear that Texas law does not recognize the "peculiar risk" exception identified in § 413 of the Restatement (Second) of Torts. In Plaintiffs' Response to Defendant's Motion for Summary Judgment (Docket No. 58), Plaintiffs contend that Texas has adopted that exception and cites *Scott Fetzer Co. v. Read,* 945 S.W.2d 854 (Tex.App.—Austin 1997) *aff'd,* 990 S.W.2d 732 (Tex.1998). "The peculiar-risk exception establishes liability for an employer who hires an independent contractor to do work that the employer knows is likely to create 'a peculiar risk of physical harm to others' absent special precautions." *Read,* 945 S.W.2d at 860. However, the *Read* Court states that "[w]e need not formally adopt section 413, however, because we believe a balancing of the factors present in this case under traditional Texas notions of duty is sufficient to impose" a duty in this case. *Id.* at 862. In fact, on appeal, the Supreme Court of Texas, using the *Redinger* control analysis, found a duty because the defendant "retained control"

over that aspect of work that specifically related to the alleged injury. 990 S.W.2d at 735–36. Again, the *Read* case imposed on the employer of an independent contractor liability to a "third person," not to the independent contractor's employee. More recently, another Texas court of appeals has declined to adopt the "peculiar risk" exception in § 413. *Arlen v. The Hearst Corp.,* 4 S.W.3d 326, 328 (Tex. App.—Houston [1st Dist.] 1999, writ denied). The Court finds no other Texas case applying the "peculiar risk" doctrine, nor do Plaintiffs cite any. While Texas does recognize the "inherently dangerous" exception to the rule of employer nonliability, another Texas appeals court has expressed the view that the employee of an independent contractor could not recover even in that context. *Humble Oil & Refining Co. v. Bell et al.,* 180 S.W.2d 970, 975–76 (Tex.Civ.App.—El Paso 1943), *rev'd on other grounds,* 142 Tex. 645, 181 S.W.2d 569 (1944). In sum, the Court finds no authority in Texas for a "peculiar risk" exception.

## CONCLUSION

For the reasons stated above, it is ORDERED that Defendant Day's Motion for Summary Judgment (Docket No. 55) be GRANTED in part and DENIED in part. It is GRANTED as to Plaintiffs claim of negligent supervision and also as to a claim under the "peculiar risk" exception. It is DENIED, without prejudice, on the negligent hiring claim. The Court seeks more input as to what is current Texas law in view of authorities cited herein. Further, assuming an employee of an independent contractor can invoke this theory, what constitutes "negligent hiring" in the context of this case? Specifically, what is it about Serrata's background in the context of fence building that would make Day "negligent" in hiring him? That is, what

did Day know or should have known about Serrata that would make him "negligent" in retaining him?

If Defendant is inclined to file a second summary judgment motion on this point, he should do so no later than October 16, 2000.