Opinion issued June 1, 2006












     







In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00016-CV




VANCE HARRISON, Appellant

V.

BROADBAND SERVICES, INC., Appellee





On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2002-12646





MEMORANDUM OPINION
          Appellant, Vance Harrison, appeals from a summary judgment rendered in
favor of appellee, Broadband Services, Inc. (“Broadband”), on Harrison’s personal
injury claim alleging negligent training and supervision. In five issues, Harrison
contends that: (1) Broadband owed a duty to train and supervise satellite dish
installers and breached that duty; (2) Broadband exercised contractual control over
the satellite dish installers pursuant to an express and implied contract; (3) the
doctrine of res ipsa loquitur applies to his claim; (4) this is not a premise liability
case; and (5) the trial court erred in granting summary judgment on the negligent
training and supervision claims. We affirm.
Background
          In August 1998, Primestar, Inc. (“Primestar”) and J.E.T. Satellite Services, Inc.
(“J.E.T.”) entered into a Full Service Provider Agreement (“FSPA”) which provided
that J.E.T. would perform authorized installation and service work on Primestar
satellite television programming equipment. In January 1999, Hughes Electronics
Corporation entered into an asset purchase agreement with Primestar to replace
Primestar and its services with services from DirecTV, a Hughes Corporation
subsidiary. Pursuant to the asset purchase agreement, Primestar and J.E.T. executed
an amendment to their FSPA that indicated that J.E.T. would replace Primestar
equipment with DirecTV equipment, known as fulfillment work. To accomplish the
work, J.E.T. contracted with William Barker d/b/a Tex-Star Dish (“Tex-Star”), and
Tex-Star agreed to provide satellite installers who would perform the actual
fulfillment work.
          On December 14, 1999, J.E.T. merged with Broadband. Under the terms of the
merger, Broadband assumed all the property, rights, privileges, powers, debts,
liabilities, and duties of J.E.T. Thus, Broadband “stepped” into the shoes of J.E.T.
with respect to the FSPA and the Tex-Star contract.
          In February or March 2000, Harrison received a notice that his Primestar
satellite dish system would be replaced by a DirecTV satellite dish. On or about
March 22, 2000, David Ontiveros, a Tex-Star installer, came to Harrison’s residence
to install the DirecTV satellite system. Approximately one month later, on April 19,
Harrison left his condominium building and walked toward his car. When he reached
the front of his car, directly below his three story building, the old Primestar satellite
dish fell from the roof, striking Harrison on the right side of his neck and shoulder.
          Harrison filed this suit against Broadband,


 alleging that Broadband retained
actual and contractual control over the Tex-Star installers and, thus, had a duty to
train and supervise the installers properly. Harrison also alleged that the
circumstances gave rise to the application of the doctrine of res ipsa loquitur.
          Broadband filed a summary judgment motion contending that its motion should
be granted because (1) Broadband did not retain, actually or contractually, a right to
control the employees or independent contractors of Tex-Star Dish; (2) Broadband
did not breach a duty owed, if any, to Harrison; and (3) the doctrine of res ipsa
loquitur is not applicable. The trial court granted Broadband’s motion without stating
the grounds therefor.
Standard of Review
          A party moving for a traditional summary judgment has the burden of proving
that there is no genuine issue of material fact and that the movant is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt., 690
S.W.2d 546, 548 (Tex. 1985); Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663,
670 (Tex. App.—Houston [1st Dist.] 1996, no writ). When deciding whether there
is a disputed material fact issue precluding summary judgment, evidence favorable
to the non-movant will be taken as true. Nixon, 690 S.W.2d. at 548–49. Every
reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor. Id. at 549.
Duty: Right to Control
          In his first, second, and fifth issues, Harrison argues that because Broadband
had a duty to train and supervise the installers employed by Tex-Star and Broadband
breached those duties, the trial court erred in granting summary judgment on his
personal injury claim based on negligent training and supervision. He asserts that
Broadband exercised actual and contractual control over the training and supervision
of Tex-Star employees and therefore owed him a duty.
          Duty is the threshold question in a negligence case.


 Midkiff v. Hines, 866
S.W.2d 328, 331 (Tex. App.—Houston [1st Dist.] 1993, no writ). Whether a duty
exists is a question of law. Id. at 332. Typically, a general contractor has no duty to
ensure that an independent contractor performs his work in a safe manner. Elliot-Williams Co. v. Diaz, 9 S.W.3d 801, 803 (Tex. 1999). However, in some
circumstances, a general contractor may have a duty regarding a dangerous condition
arising from the work of an independent contractor. Redinger v. Living, Inc., 689
S.W.2d 415, 418 (Tex. 1985). The scope of this duty was defined in Redinger when
the Texas Supreme Court adopted section 414 of the Restatement (Second) of Torts:
One who entrusts work to an independent contractor, but who retains the
control of any part of the work, is subject to liability for physical harm
to others for whose safety the employer owes a duty to exercise
reasonable care, which is caused by his failure to exercise his control
with reasonable care.

Id. (citing Restatement (Second) of Torts § 414 (1977)); see Read v. Scott Fetzer
Co., 990 S.W.2d 732, 735 (Tex. 1998) (applying section 414 of the Restatement to
a non-premises liability case). Thus, “when a general contractor exercises some
control over a subcontractor’s work he may be liable unless he exercises reasonable
care in supervising the subcontractor’s activity.” Redinger, 689 S.W.2d at 418.
          In this case, the issue is whether Broadband retained a degree of control over
either the means, methods, or details of the work of Tex-Star’s installers sufficient to
give rise to a duty to Harrison. Elliot-Williams Co., 9 S.W.3d at 804. The degree of
control needed to create a duty is set forth in the comments to section 414:
The employer must have retained at least some degree of control over
the manner in which the work is done. It is not enough that he has
merely a general right to order the work stopped or resumed, to inspect
its progress or receive reports, to make suggestions or recommendations
which need not necessarily be followed, or to prescribe alterations and
deviations. Such a general right is usually reserved to employers, but it
does not mean that the contractor is controlled as to his methods of
work, or as to operative detail. There must be such a retention of a right
of supervision that the contractor is not entirely free to do the work in
his own way.

Id. (citing Restatement (Second) of Torts § 414 cmt. c (1965)). Additionally, the
control of the general contractor “must relate to the condition or activity that caused
the injury.” Clayton W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d 523, 528 (Tex.
1997).
          We must determine whether Broadband retained either actual or contractual
control over the training or supervision of Tex-Star’s installers. 
Actual Control
          With respect to the alleged duty to train, Harrison points to the following
deposition testimony of the Tex-Star owner as evidence of actual control:
Q: Interrogatory No. 17: “Describe all training or instruction
given by Tex-Star Dish to its independent contractors whose work
responsibilities involved installing and servicing satellite dish
equipment on March 22, 2000.”
 
A: Tex-Star itself did not give any body [sic] any training;
however, J.E.T./Broadband did require that installers attend instruction
at their facility in Houston.
Harrison contends that this testimony establishes that Broadband exercised a right of
control sufficient to charge Broadband with a duty to Harrison.
          We disagree. This deposition testimony is no more than a broad statement that
provides no evidence of Broadband’s alleged control over the “means, methods, or
details” of the installers’ work. It cannot be determined what the instruction
entailed–whether it consisted of suggestions or requirements, or even whether it
covered the actual manner in which the work should be performed. Without evidence
to show that Broadband actually retained the right to control the “means, methods, or
details” of the installer’s work, we cannot conclude that Harrison created a fact issue
on the existence of Broadband’s alleged duty to train based on actual control.
          Regarding Broadband’s alleged actual control over the supervision of Tex-Star’s installers, Harrison contends that Broadband’s duty arose from its “ownership”
of the old Primestar dish. Again, however, Harrison directs us to no evidence that
Broadband retained any right to control the independent contractors employed by
Tex-Star as to how they disposed of the old equipment. Harrison has produced no
evidence to create a fact issue that Broadband exercised control over the “means,
methods, or details” of the installers’ work. 
Contractual Control
          Harrison next contends that the FSPA language relating to training creates a
duty both to train and to supervise.


 The existence of a contractual right of control
is generally a question of law for the court. Chi Energy, Inc. v. Urias, 156 S.W.3d
873, 879 (Tex. App.—El Paso 2005, pet. denied). Our primary consideration when
interpreting a contract is the parties’ intent as expressed in the instrument. Elliot-Williams Co., 9 S.W.3d at 803. We examine a writing as a whole in an effort to
harmonize and give effect to all the provisions of the contract so that none will be
rendered meaningless. Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121
(Tex. 1996). If a contract is unambiguous, courts will construe it as a matter of law. 
Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).
          The FSPA between DirecTV/Primestar and Broadband states that Broadband
“agrees to provide at all times a qualified and fully-trained administrative, sales,
installation, and service staff.” Harrison contends this language establishes a
sufficient right of control by Broadband over the training of Tex-Star’s installers. 
Harrison also argues that this language establishes a right of control over the
supervision of Tex-Star’s installers because “it is reasonable to construe [this
language] that a fully trained administrative staff cannot administrate without
supervising.” However, the contract also provides that “[t]his writing represents the
entire agreement and understanding of the Parties with respect to the subject matter
hereof” and that “[t]his agreement is binding upon the parties hereto, and their
respective executors, administrators, heirs, assigns, and successors in interest.” This
language, taken as a whole, shows that DirecTV and Broadband intended only to
establish rights between themselves and not to establish Broadband’s right of control
over Tex-Star’s installers, who were not named in the contract. Broadband merely
agreed to provide the installers, which it did by hiring Tex-Star. Thus, this contract
did not establish a contractual right of control regarding the training or supervising
of Tex-Star’s installers.
          We hold that Harrison has not presented any evidence sufficient to raise a fact
question as to whether Broadband retained a right of control over the means,
methods, or details of the work of Tex-Star’s installers. Accordingly, we further hold
that Broadband did not owe Harrison a duty to ensure that Ontiveros performed his
work in a safe manner.
          We overrule Harrison’s first, second and fifth issues.
Conclusion
          Having overruled Harrison’s first, second and fifth issues, we need not address
his third and fourth issues. We affirm the judgment of the trial court.
 
 

                                                             Sam Nuchia
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Alcala.