COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ROBERTO DIAZ, | § | No. 08-15-00358-CV |
| | § | |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | County Court at Law No. 6 |
| | § | |
| R & A CONSULTANTS, CORP., | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC # 2015-DCV-3097) |
| | § | |

## DISSENTING OPINION

In affirming the trial court's granting of a summary judgment, the majority concludes that R&A, an asbestos consultant that additionally performed as a project designer, manager, and air monitor of an asbestos removal jobsite, owed no duty to ensure that workers were provided and using appropriate protective equipment while they worked. More specifically, the majority concludes that R&A owed no duty to ensure that asbestos removal worker Diaz was furnished with proper fall safety equipment despite R&A's role in preparing a project design that not only required use of protective equipment but also established the methods and means required of work activities. Id. Lastly, the majority concludes that R&A owed no duty to ensure proper protection was used despite R&A's agreement with Simon to perform as a project manager and provide professional services that included ensuring compliance with work practices and standards throughout the duration of the project from start to completion.

In my view, the majority's reasoning fails to recognize the statutorily mandated safety functions that R&A agreed it would perform, which R&A knew from its own survey work, included removal of asbestos containing material on the walls and ceiling of the space. By its agreement with Simon, R&A promised to perform non-delegable duties mandated by Texas law to ensure removal work was performed as required by standards established by health officials for the protection of workers on site and the public generally. Having made promises to perform as an asbestos consultant, project designer, project manager, and air monitor, R&A retained supervisory control over the site itself and, most importantly, over proper use of appropriate personal protective equipment required of all asbestos-related activities. Based on the summary judgment record presented, I would conclude that R&A had a non-delegable duty to perform its contractual duties as specified in the Texas Asbestos Health Protection Act (TAHPA).[1] Moreover, I would also conclude that genuine issues of material fact exists on whether R&A performed those duties with reasonable care. Unlike the majority, I would conclude that Diaz presented sufficient evidence to show that genuine issues of material fact exists on a link between R&A's duties and the activity or condition that caused Diaz's injury. Respectfully, I dissent.

### FACTUAL BACKGROUND & REGULATORY SCHEME

Diaz alleged he was injured in a fall while working on the ceiling of an asbestos abatement project in a public building. He alleged his injury occurred after he was ordered by R&A to seal off an air pressure leak by taping plastic in a dimly lit area of the ceiling. To gain access to the air-leak, Diaz alleged he was forced to unlatch his fall protection device so he could position himself to do the work he was assigned to do on that occasion. As he moved toward the leak, the

---

[1] *See* 25 TEX.ADMIN.CODE ANN. §§ 295.31 - .73.

2

ceiling beneath him collapsed causing him to fall several feet to the ground where he sustained injuries.

The asbestos job site where Diaz worked was located in a retail mall space owned by Simon. Prior to renovating the space, Simon hired R&A to conduct an asbestos survey to determine whether the space contained any asbestos material as it planned on renovating for a new retail store. After surveying the site, R&A reported back that it had discovered asbestos-containing joint compound texture material on the walls and ceilings of the retail space. R&A noted that "[t]he materials were expected to readily become friable in the presence of renovation or demolition activities; As such, they would be considered regulated, or RACM, and should be properly removed beforehand." R&A noted that "any disturbance of asbestos-containing materials within a public building, regardless of apparent quantity or friability, must be performed by licensed individuals under properly-controlled conditions."

Following receipt of the survey, Simon sent out requests for proposals (RFPs) for asbestos abatement work and air monitoring for the project in a request identified as "Asbestos Abatement, Space Q-05A." Responding, R&A submitted a proposal for project design, project management, and air monitoring for the project. Independent contractor Robles similarly responded by submitting its own proposal to perform as the asbestos abatement contractor for the job. Shortly thereafter, Simon entered into separate service agreements with R&A and Robles, respectively. R&A agreed it would provide project design and air monitoring during the abatement process. Juan Ayala, R&A's authorized representative, testified that R&A "wore four hats on this project so to speak: project consulting, project management, project designer, and project air monitor." As a contractor, Robles agreed it would provide all labor and material to perform the requested

3

asbestos abatement on the described space. Shortly thereafter, R&A drafted an "Asbestos Project Design" for the abatement project which outlined various specifications and requirements for performance of the asbestos removal work.

## ASBESTOS ABATEMENT JOB SITE

Based on the functions R&A agreed to perform by its contract with Simon, Diaz argues that R&A owed him a duty of care to ensure that he could perform his job safely. Diaz asserts such duty was imposed on R&A pursuant to relevant provisions of the TAHPA. Additionally, Diaz asserts that evidence showed that R&A actually exercised control over the work that resulted in his injuries, and R&A's exercise of control was more than merely the right to order the work to be started or stopped. In opposition, R&A argues that it had no direct relationship with Diaz and consequently it owed no duties to him with regard to his work on the asbestos abatement project.

With respect to work activities, Texas law recognizes that an owner or general contractor who retains a right to control an independent contractor's work may be liable for negligence in the exercise of that control. *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004); *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002); *Redinger v. Living, Inc*., 689 S.W.2d 415, 418 (Tex. 1985). In *Redinger*, the Texas Supreme Court expressly adopted the limited-duty rule set forth in the Restatement (Second) of Torts section 414 which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Redinger,* 689 S.W.2d at 418 (quoting RESTATEMENT (SECOND) OF TORTS §414 (1977)). Under this standard, the right to control must be more than a general right to order work to stop and start, or to inspect progress. *Coastal Marine Serv. of Texas, Inc. v. Lawrence*, 988 S.W.2d 223, 226

4

(Tex. 1999); *Redinger,* 689 S.W.2d at 418. The supervisory control must relate to the activity that actually caused the injury, and it must grant at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner. *Coastal Marine Serv.*, 988 S.W.2d at 226; *Redinger,* 689 S.W.2d at 418. Right to control may be shown by explicit contractual assignment or actual exercise of control. *Khan*, 138 S.W.3d at 292. "Generally, the former is a question of law for the court and the latter a question of fact for the jury." *Id.*

With regard to projects involving asbestos abatement work, the Texas Legislature additionally adopted the Texas Asbestos Health Protection Act (TAHPA) providing rules and regulations applicable whenever asbestos-related activities are undertaken in public and commercial buildings.[2] 25 TEX. ADMIN. CODE §§ 295.31 (b), 295.32 (2). Under the TAHPA, the Legislature recognized the dangerous nature of asbestos-related work and the need for minimization of public exposure to airborne asbestos fibers. *Id.*, § 295.31. The TAHPA enacts regulations for the purpose of not only protecting the occupational health of workers performing asbestos related activities, but also for the protection of all persons who may enter public buildings where such work has been performed. *Id.* Recognizing the relationship between exposure to airborne asbestos fibers and diseases such as cancer or asbestosis, the regulations acknowledge that prevention of asbestos-related disease depends entirely on limiting the exposure to airborne asbestos fibers. *Id.*, § 295.31 (a). The stated purpose of the regulatory scheme is "to establish the means of control and minimization of public exposure to airborne asbestos fibers, a known

---

[2] Section 1954.002 of the Texas Occupations Code defines a "Public building" to mean a "building used or to be used for a purpose that involves public access or occupancy and includes a building that is vacant at any time, including during preparation for actual demolition." TEX. OCC. CODE ANN. § 1954.002 (11).

5

carcinogen and dangerous health hazard, by regulating asbestos related activities in public and commercial buildings and facilities as defined by these sections." *Id*., § 295.31 (b).

Accordingly, statutory rules are imposed on all buildings which are subject to public occupancy, or to which the general public has access, and apply to "all persons disturbing, removing, encapsulating, or enclosing any amount of asbestos within [such] buildings for any purpose, including repair, renovation, dismantling, demolition, installation, or maintenance operations, or any other activity that may involve the disturbance or removal of any amount of asbestos-containing building material (ACBM) whether intentional or unintentional." *Id*., § 295.31 (c)(1)(A). Where applicable, these rules require compliance not only with its provisions but also with all applicable standards of the U.S. Environmental Protection Agency and the U.S. Occupational Safety and Health Administration. *Id*. Pursuant to this regulatory scheme, licenses are required of anyone engaged in asbestos-related activities in public buildings. *Id*.

Pursuant to the TAHPA, a building owner retains the primary responsibility for compliance with applicable rules. *Id*., § 295.34. However, among other duties, the owner may delegate the duty of overseeing the work performance of a licensee, as it relates to contractual obligations. *Id*., § 295.34(b)(5)(C). For example, a building owner may hire a consultant to perform asbestos project management. *Id*., § 295.47(a)(1). "If performing asbestos project management, the consultant is responsible to ensure proper procedures are used from the time of arrival of the abatement contractor on site through the completion of the removal of the containment and the departure of the contractor from the project site." *Id.* A building owner may similarly hire a licensed asbestos abatement contractor to conduct asbestos abatement. *Id*., § 295.47(b)(1)-(4).

6

As other courts have noted, when the State has enacted provisions in an inherently dangerous field, and has imposed regulatory duties on an individual or entity working in that field, these duties are considered non-delegable, and cannot be contracted away. *See, e.g., Randall Noe Chrysler Dodge, LLP v. Oakley Tire Co.,* 308 S.W.3d 542, 547 (Tex. App.—Dallas 2010, pet. denied); *Morris v. JTM Materials, Inc.,* 78 S.W.3d 28, 45 (Tex. App.—Fort Worth 2002, no pet.) (a motor carrier licensed to operate in Texas cannot contract away its right to control the drivers who transport its goods in order to escape liability for injuries the drivers may negligently cause to others); *Wiggs v. City of Phoenix,* 198 Ariz. 367, 10 P.3d 625, 627-28 (where employer had a non-delegable duty to the public interest, the employer may not disclaim that duty through contract); *Goodbar v. Whitehead Bros.,* 591 F. Supp. 552, 558 (W.D. Va. 1984), *aff'd sub nom. Beale v. Hardy*, 769 F.2d 213 (4th Cir. 1985) (the suppliers of an inherently dangerous product like asbestos had a non-delegable duty to provide adequate warnings that will reach the ultimate user). In general, a duty is considered nondelegable when it "is imposed by law on the basis of concerns for public safety, the party bearing the duty cannot escape it by delegating it to an independent contractor." *Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 795 (Tex. 2006); *see also MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 153–54 (Tex. 1992) (holding that a creditor cannot escape the duty of peaceable repossession by delegating it to an independent contractor); *Kolius v. Center Point Energy Houston Elec*. LLC, 422 S.W.3d 861, 865 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

With regard to the job site at issue here, I would conclude that R&A retained a right to control work performed on the site based on applicable laws and regulations that were enacted to protect occupational health and public safety due to the inherent danger of the asbestos abatement

7

work being performed at the time. Before work began, R&A filed required notification forms with the Texas Department of State Health Services in which it identified itself as the "project consultant or operator," and identified Robles as the "asbestos contractor." Moreover, R&A's contract with Simon obligated it to provide a field representative at the job site for "the purpose of providing project administration, observation and field-testing of specific aspects of the project as authorized by the Owner." Although the contract includes a disclaimer of control, I would conclude, nonetheless, that a fair reading of the contract as a whole supports a finding that R&A, as the licensed project consultant and manager, was hired by Simon to observe, monitor and inspect the job site to ensure that Robles was performing its work as required by the specifications of the asbestos abatement project design and applicable regulations.

**Duties Regarding Safety and Personal Protection Equipment (PPE)**

The majority recognizes that the TAHPA addresses the need for asbestos removal workers to wear adequate personal protection equipment, also known as PPE's, and in turn, it further acknowledges that PPE's include fall protection devices, such as the harness system that was provided to Diaz on the day of his fall. Nonetheless, despite acknowledging the broad scope of protection included by the requirement, the majority concludes that the duty to ensure that Diaz was equipped with adequate PPE's rested solely on the contractor, in this instance Robles, and the building owner, Simon, and that R&A in its various capacities owed no duty to ensure compliance as a matter of law. As explained below, however, my concern is that the majority's decision overlooks multiple provisions in the TAHPA that directly impose a supervisory duty on R&A in its capacities as project designer, consultant and project manager, to ensure compliance with safety provisions including proper use of PPE's when work is performed on a regulated asbestos job site.

8

R&A does not dispute that it designed the project, operated as the asbestos consultant, and employed the manager of the project. As a consultant and project manager, I would conclude that R&A agreed it would ensure that asbestos abatement workers were provided and using proper PPE's, as envisioned by the regulatory scheme, throughout the duration of the project.

The TAHPA provides that a licensed project consultant, such as R&A, is entitled to serve as a project designer, and in that capacity, the consultant is tasked with specifying the "abatement procedures and personal protection equipment to be employed at any time during the asbestos abatement activity, from the start through the completion dates of the project." 25 TEX. ADMIN. CODE §§ 295.32 (18), 295.47 (a). And, R&A did in fact devote at least two pages of the project design specifying the use of PPE's meeting minimum requirements under OSHA, NIOSH (the National Institute for Occupational Safety and Health), and other applicable regulations. As the majority recognizes, Robles had the primary responsibility to "supply and train employees who perform asbestos-related activities in the use of personal protection equipment, and to supervise their compliance." 25 TEX. ADMIN. CODE §§ 295.45(f)(5); 295.46 (e)(1)(4). Differing from the majority, however, I would conclude that R&A owed a duty under the TAHPA to ensure that Robles properly performed its responsibility with regard to requiring the use of proper PPE's to complete assigned tasks. *Id*., §§ 295.47, 295.49.

R&A's duty to ensure that Robles complied with both the TAHPA and contract requirements did not end with the selection of proper PPE's, but remained ongoing throughout the life of the abatement project. In particular, section 295.47(a)(1) of the TAHPA expressly requires a licensed project consultant—in this case, R&A—to "ensure proper procedures are used from the time of arrival of the abatement contractor on site through the completion of the removal of the

9

containment and the departure of the contractor from the project site." 25 TEX. ADMIN. CODE § 295.47(a)(1). As a consultant, R&A represented the interests of the building owner during the conduct of the abatement project and its responsibilities included "requiring compliance with regulations and specifications," and "requiring remedy of infractions[.]" *Id*., § 295.47(h)(4).

Similarly, as project manager, the TAHPA imposed on R&A the responsibility to "(1) monitor the project to document the standards designed to protect project personnel and building occupants, and the adequacy of controls [and] (2) observe that contractual requirements are being met by the abatement contractor." *Id*., § 295.49 (a). The TAHPA further specifies that a project manager must remain on site when abatement activities are being performed, and its duties include "observance and monitoring of compliance" of standards and practices for "operations and maintenance activities, according to § 295.59 of this title (relating to Operations:  Operations and Maintenance (O&M) Activities)." *Id*., § 295.49(e)(5). In turn, section 295.59 specifies various requirements for "work practices" at abatement project sites, to include the responsibility of "furnishing and requiring the use of respirators, protective clothing, high-efficiency particulate air filter (HEPA) vacuum machines, glove bags, and other necessary equipment for all who perform O&M activities." *Id*., § 295.59 (b)(1). Therefore, read together, these provisions required R&A, as consultant and project manager, to ensure that Robles, as the abatement contractor, fulfilled its duty of furnishing proper PPE's to its workers at a job site, and to ensure that Robles complied with the regulations and specifications related to the furnishing of proper PPE's throughout the life of the project.[3]

---

[3] I also find it significant that the summary judgment evidence submitted by Diaz, including the deposition testimony of a Robles' supervisor, Arturo Mimbela, indicated that R&A did in fact have the authority to oversee safety issues at the job site, and that Robles would be required to "listen" to R&A if it pointed out a problem related to safety issues,

10

In other words, the TAHPA does not contemplate that R&A could delineate the type of equipment to be supplied by the contractor, but then turn a blind eye should abatement contractors supply its workers with improper or substandard equipment. As an example, if Robles had selected paper masks or other protective clothing that failed to protect workers from exposure to asbestos fibers in violation of contract specifications, R&A could not simply stand-by and ignore such a violation of a regulation intended to protect workers' occupational health. Because use of proper fall safety equipment is also a necessary component of protective equipment for workers engaged in abatement work high above ground, I do not believe that R&A could similarly turn a blind eye if Robles in fact supplied inadequate protection systems for its workers contrary to the project design and industry standards.

Based on these statutory provisions and Texas law, I would therefore conclude that R&A, as project manager and consultant of an asbestos abatement job site, retained duties under the TAHPA to ensure that Robles, and any abatement supervisor hired by Robles, provided its workers with adequate PPE's, to include adequate fall protection systems. *See* 25 TEX. ADMIN. CODE §§ 295.32 (18), 295.47 (a)(1) and (h)(4); *see also*, *Khan*, 138 S.W.3d at 292; *Bright*, 89 S.W.3d at 605; *Redinger,* 689 S.W.2d at 418.

### The Nexus

As the majority acknowledges, the summary judgment evidence supports an inference that on the day of Diaz's fall, an R&A employee detected a breach in the containment zone, pointed it out to Robles, and asked that it be repaired. Although it is not entirely clear who directed Diaz to

---

including problems related to the use of fall safety equipment. This testimony is consistent with my reading of R&A's duties and responsibilities under the TAHPA.

remedy the situation, the summary judgment evidence established that Diaz was in fact dispatched to remedy a breach in the containment zone. Moreover, the summary judgment evidence also established that Diaz fell as he worked on this assigned task, and at the least, these circumstances raised a question of fact regarding whether his fall and consequent injuries were caused, at least in part, by the fact that he was not provided with proper fall safety equipment as alleged by his pleadings.

As set forth above, R&A had an overarching duty in its various capacities, as project consultant and manager, to ensure that Robles furnished Diaz with proper fall safety equipment, as part of the PPE's required on the job site, when performing asbestos-related activities such as repairing a breach identified by air monitoring in the containment zone. As such, I would conclude that—contrary to the majority's opinion—there is in fact a nexus between R&A's duties and Diaz's injuries.

And finally, I would conclude that the evidence raised a question of fact regarding whether R&A failed to exercise reasonable care in performance of its duties. The evidence established that R&A instructed Robles' workers on the use of respirators and protective clothing on the first day of the job, and that R&A kept daily logs of their use of such equipment, but there is nothing in the record to suggest that R&A took steps to ensure that the workers were equipped with proper fall protection equipment to perform assigned tasks. To the contrary, as the majority recognizes, R&A only instructed the workers on the first day of the job with regard to the use of "full-face respirators and the protective clothing," but not with regard to fall protection equipment. The daily logs similarly only pertained to the use of respirators and protective clothing, but not to fall protection equipment. In sum, the undisputed evidence established a question of fact on whether

12

Diaz was provided with adequate fall protection equipment on the day of his injury, given his assigned tasks of generally performing asbestos abatement on walls and ceilings, and specifically repairing a containment leak—despite the presence of an R&A employee on the jobsite that day.[4]

For all of the reasons set forth above, I would conclude that R&A owed a duty to Diaz as a matter of law with regard to Diaz's activities at the time of his fall, and that a question of fact remained for the jury on the question of whether R&A breached its duties to Diaz and whether this breach was the proximate cause of Diaz's injuries.

April 10, 2019

GINA M. PALAFOX, Justice

---

[4] In addition, although the majority does not address this issue, I note that Diaz also claimed that his fall may have been caused in part by inadequate lighting in the containment zone and/or by improper scaffolding. In its contract with Simon Properties, in which it set forth the project specifications, R&A specified that the contractor was required to provide, among other things, adequate temporary lighting and scaffolding to be used in the containment zone, and that all such materials and construction were required to conform to applicable rules and regulations.

13