02-09-459-CV















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00459-CV 

 

 


 
 
 Tim Calhoun, Gustine Gaston, and
 Jossie Gaston, as Heir and on Behalf of the Heirs of Gustine Gaston
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 F. Hall Mowing Company
 
 
  
 
 
 APPELLEE 
 
 


 

------------

 

FROM THE
153rd District Court OF Tarrant
COUNTY

------------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellants Tim Calhoun and Gustine
Gaston[2] filed
suit against Appellee F. Hall Mowing Company. 
Appellee had been hired to dismantle the central utility building on the
campus of the University of Texas at Arlington. 
A switch gear housing building was located inside the central utility
building; because the central utility building was being dismantled, roofing
contractors (not Appellee) were hired to put a roof on the switch gear housing
building to protect it from the elements that it would be exposed to when the
central utility building was totally taken down.  While Calhoun and Gustine were cutting pipes
to dismantle the central utility building for Appellee, a fire broke out on the
roof being placed on the switch gear housing building.  Calhoun and Gustine alleged that Appellee
negligently caused this fire and that, to avoid the fire, they both jumped off
of a scissor lift that was eighteen feet in the air and were injured. The trial
court granted summary judgment for Appellee on Calhoun’s claim.  Gaston’s claim proceeded to trial, and the
trial court granted a directed verdict for Appellee.  In two issues, Calhoun and Gaston contend,
respectively, that the trial court erred by granting summary judgment and a
directed verdict.  We will affirm.

II.  Factual and
Procedural Background

A.          
Calhoun’s
Claim

          After the incident and prior to filing
his negligence suit against Appellee, Calhoun filed a claim for workers’
compensation benefits with the Texas Workers’ Compensation Commission.  After a benefit contested case hearing on
April 28, 2004, the TWCC hearing officer found that Appellee had workers’
compensation insurance with Texas Mutual Insurance Company and decided that

Claimant [Calhoun] did not sustain a compensable injury on October 24,
2003.  Claimant did not have [a] disability
resulting from an injury sustained on October 24, 2003; in any event, since
there is no compensable injury there can be no disability.  At the time of the claimed injury on October
24, 2003, F. Hall Mowing was Claimant’s employer for purposes of the Texas
Workers’ Compensation Act. 

The hearing
officer found that the workers’ compensation carrier was not liable for
benefits.

In
the trial court, Appellee filed a partial second motion for summary judgment.[3]  Appellee asserted several grounds for summary
judgment, including that it was entitled to summary judgment based on the
exclusive remedy provision of the workers’ compensation statute.  Calhoun and Gaston filed a response to Appellee’s motion.  The
trial court granted summary judgment for Appellee and ordered that Calhoun take
nothing on his cause of action against Appellee.

B.          
Gustine’s
Claim

The
remaining claim, Gustine’s negligence claim against Appellee, proceeded to
trial.[4]  During the trial, Gustine’s deposition and
Calhoun’s deposition were read to the jury, and Devin Hall, the son of the
owner of Appellee, gave live testimony.

Gustine
represented that he was a very experienced, safety-conscious, good welder and
cutter.  His understanding was that he
was acting as a contractor on Appellee’s jobs;
Appellee told him what the job was, and he did it on his own.  Gustine decided exactly how to do the cutting
and torching.  Gustine knew that he
needed to be careful when he used the cutting torch to not let the sparks fly
onto anything.

He
said that the fire started about twenty or thirty minutes after he and Calhoun
finished using the cutting torch.  When
the fire broke out, Calhoun said that they needed to get off the scissor lift[5]––because
it was slow––and Gustine jumped first.  Gustine
broke his hip, twisted his ankle, and hit his head on the concrete.  Gustine said that he did not know how the fire
started; he suspected a power saw might have caused the fire because a worker
had been using a power saw about twenty minutes before the fire started and because
Gustine saw sparks flying from the saw.

Gustine
did not know how much he was claiming in damages.  He said that he had not been reporting income
to the IRS because he did not have any income after paying expenses.

          Calhoun testified that the day before
the accident, a representative of Appellee came to Gustine’s trucking company
and said that he had some cutting jobs for Gustine and Calhoun.[6]  Calhoun recalled that he arrived at the
jobsite the next day around 10:00 or 11:00 a.m. 
Mr. Hall, Devin, and several of Appellee’s
employees were on the jobsite, along with a roofing company that was working on
the roof of the switch gear housing building.

Calhoun
said that Mr. Hall told them to start working on the backside of the building
and that when he and Gustine had finished, Mr. Hall brought them to the front
side.  However, Calhoun said that Devin
was the main person who told him and Gustine what to do.  Devin used a big forklift to hold up the pipes
and then told Calhoun and Gustine where to cut the pipes.  Calhoun agreed, however, that the details on
how to cut the pipe were left up to him and Gustine.  Devin charged the battery on the scissor lift
and told Calhoun and Gustine to use it.[7]  Calhoun said that the scissor lift was old,
rusty, and slow but that they had been using it for two to three hours before
the fire.  Prior to the fire, Calhoun had
cut two large water pipes with a cutting torch that was already there when he had
arrived. 

Calhoun
said that at around 2:00 p.m., someone working for Appellee was up on a
forklift using a gas saw to cut pipes when a blaze broke out.  Calhoun and Gustine decided to jump off the
scissor lift because it was going to take too long to ride it to the ground.[8]  Calhoun said that Gustine jumped backwards off
the lift because his shirt arm had caught on fire.[9]  After the fall, Devin came over and helped Gustine.
 At the time of his deposition, Gustine still
had a limp from the fall and was taking pain pills every day.

When
asked about the cause of the fire, Calhoun said that he did not know what had caused
the fire, but that it could not have been him or Gustine because the fire
started on the roof, and he and Gustine were at least four feet from the roof.  Calhoun said that he had used a cutting torch
thousands of times, so no one had to tell him to be careful because sparks
could fly; he also knew that if sparks landed on any material, it could start a
fire.

          Devin Hall testified that his mother
owns Appellee and that he serves as the project manager.  With regard to the project at UTA, Appellee was tasked with dismantling a building,
including cutting the pipes.[10]  Devin said that Mr. Hall was at the jobsite
helping and that his cousin Corwin Moss was working as a floater on the
project.

The
day before the fire, Devin had seen roofers working on the switch gear housing building
(the building that Appellee was demolishing was over this building);
they were putting up temporary structures so that they could lay the roof.  That same day, Devin met with the roof
contractors and was instructed that cutting and welding activities should stop
while the roof contractors were working so that cutting and welding debris would
not fall onto the roof while the roof was under construction.  Devin said that there was no discussion about
a risk of fire.

The
morning of the fire, Devin met with a representative of the general contractor
to discuss whether it was permissible to proceed further with cutting pipes
that were over and around the roof.  Devin walked around and pointed out the pipes
that were going to be cut.  Because the
roof was substantially covered, the general contractor’s representative said to
“get after it.”  The representative came
back by later that day and advised that he was pleased with the work.  Devin testified that he did not have notice of
any problems.

          Devin said that Gustine and Calhoun
periodically performed welding for him and that he knew Gustine had twenty to
thirty years of experience in cutting and torching.[11]  He offered each of them $100 per day to work
on the project at UTA.[12]  Gustine and Calhoun were supposed to start on
the morning of October 24, 2003, but arrived between 1:00 and 2:00 p.m.; prior
to that time, Devin and Corwin had been cutting pipe with the power saw.  Devin told Gustine and Calhoun which pipes
needed to be cut.

          Devin saw the fire start at 5:15 p.m.  Gustine was cutting a support hanger on a
twelve- or thirteen-inch pipe, and Devin was holding it up with a telehandler when sparks flew.[13]  He understood that Gustine had broken his hip
and received burns on his back as a result of jumping from the scissor lift
when the fire broke out.

          At the close of the evidence, Appellee
made a motion for directed verdict, arguing that there was no evidence to
support a negligence claim and that there was no evidence that Appellee had
notice or knowledge of any dangerous conditions.  The trial court granted the motion.

III.  Summary Judgment on
Calhoun’s Claim was Proper

          In the first issue, Calhoun argues
that the trial court erred by granting summary judgment for Appellee on his negligence
claim.  Calhoun argues in part that the
exclusive remedy provision is an affirmative defense that must be asserted and
proven by the employer and that Appellee did not establish as a matter of law that
it was Calhoun’s employer.

          We review a summary judgment de
novo.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009). 
We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding
evidence contrary to the nonmovant unless reasonable
jurors could not.  Id.  We indulge every reasonable inference and
resolve any doubts in the nonmovant’s favor.  20801, Inc. v. Parker,
249 S.W.3d 392, 399 (Tex. 2008). 
A defendant is entitled to summary judgment on an affirmative defense if
the defendant conclusively proves all the elements of the affirmative
defense.  Chau
v. Riddle, 254 S.W.3d 453, 455 (Tex. 2008); see Tex. R. Civ. P. 166a(b), (c).  To
accomplish this, the defendant-movant must present
summary judgment evidence that establishes each element of the affirmative
defense as a matter of law.  Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).


The
Texas Workers’ Compensation Act’s exclusive remedy provision provides that “[r]ecovery of workers’ compensation benefits is the exclusive
remedy of an employee covered by workers’ compensation insurance coverage . . . against
the employer . . . for . . . a
work-related injury sustained by the employee.” 
Tex. Lab. Code Ann. § 408.001(a) (Vernon 2006).  Because the remedy provided by the TWCA is
exclusive, an employee has no alternative right of action against his employer
for injuries sustained in the course and scope of employment.  See id.;
McAlister v. Medina Elec. Co-op., Inc.,
830 S.W.2d 659, 663 (Tex. App.––San Antonio 1992, writ denied).  Thus, the exclusive remedy provision of the
TWCA bars common law claims for negligence. 
Walls Reg’l Hosp. v. Bomar, 9 S.W.3d 805, 806–07 (Tex. 1999).  Moreover, the exclusive remedy provision of
the TWCA is an affirmative defense.  Morales v. Martin Res., Inc.,
183 S.W.3d 469, 471 (Tex. App.––Eastland 2005, no pet.).  

Calhoun
argues on appeal that Appellee did not prove in the trial court that it was his
employer.  Calhoun’s arguments are based
on Appellee’s denial before the TWCC that it was
Calhoun’s employer.  Despite Appellee’s denial that it was Calhoun’s employer, the TWCC found that Appellee was Calhoun’s employer on the date
he was injured.  After receiving the
hearing officer’s decision, Calhoun had fifteen days to request the appeals
panel to review the hearing officer’s decision, see 28 Tex. Admin. Code § 143.3 (2009) (Tex. Dep’t of Ins., Div. of
Workers’ Comp.), but nothing in the record before us indicates that Calhoun
challenged the hearing officer’s decision.  Over fourteen months after the hearing officer
issued his decision and it became final, Calhoun filed the present suit in the
trial court.

In
the trial court, Appellee moved for partial summary judgment on Calhoun’s
negligence claim, arguing that it was barred by the TWCA’s exclusive remedy
provision and relying upon the unchallenged hearing officer’s decision as
summary judgment evidence.  Appellee also
attached the hearing officer’s findings of fact and conclusions of law as
summary judgment evidence, including the findings that Appellee had approved workers’
compensation insurance and that Appellee was Calhoun’s employer on the date of
the accident.  Thus, the summary judgment
evidence conclusively established that Appellee possessed an approved workers’
compensation insurance policy covering the payment of workers’ compensation
benefits to its employees on the date of Calhoun’s accident,
that Calhoun was Appellee’s employee on the date of
the accident, and that Calhoun filed a claim for workers’ compensation
benefits.[14]  Appellee thus conclusively proved its
affirmative defense––that the exclusive remedy provision of the TWCA precluded
Calhoun’s suit for negligence against Appellee. See Chau,
254 S.W.3d at 455; Walls Reg’l Hosp., 9 S.W.3d at 808
(holding that because summary judgment record established that plaintiffs’
injuries occurred in the course of their employment, the TWCA bars plaintiffs’
negligence action against the hospital); Hodges
v. Tex. TST, Inc., 303 S.W.3d 880, 882 (Tex. App.––Eastland 2009, no pet.)
(holding that because Hodges was company’s employee and because company
produced evidence that it had workers’ compensation insurance coverage, a claim
for benefits was Hodges’s exclusive remedy against company); Stewart v. Lexicon Genetics, Inc., 279
S.W.3d 364, 368–70 (Tex. App.––Beaumont 2009, pet. denied) (upholding the
granting of summary judgment for appellee on ground
that plaintiff’s negligence claims were barred by the exclu­­­­­­sive remedy
provision of the TWCA) Dickson v. Silva,
880 S.W.2d 785, 788 (Tex. App.––Houston [1st Dist.] 1993, writ denied) (holding
that because workers’ statutory remedy under the TWCA was exclusive, summary
judgment in favor of company was proper).[15]  We therefore hold that that trial court did
not err by granting Appellee’s second partial motion
for summary judgment on Calhoun’s negligence claim based on the exclusive remedy
provision of the TWCA or, alternatively, on res judicata
grounds.  We overrule the first issue.

IV.  Directed Verdict
Properly Granted

          In the second issue, Gaston argues
that the trial court erred by granting Appellee’s
motion for directed verdict.  A directed
verdict is proper only under limited circumstances: (1) when the evidence
conclusively establishes the right of the movant to
judgment or negates the right of the opponent, or (2) when the evidence is
insufficient to raise a material fact issue.  See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Farlow v. Harris Methodist Fort Worth Hosp.,
284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet. denied).  In reviewing a directed verdict, we must
credit favorable evidence if reasonable jurors could and disregard contrary
evidence unless reasonable jurors could not. 
See City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005).

          If the question to be decided is
whether the losing party at trial raised a material fact issue, we consider all
the evidence in a light most favorable to the party against whom the verdict
was instructed and disregard all contrary evidence and inferences if a
reasonable factfinder could; we give the losing party
the benefit of all reasonable inferences created by the evidence.  Coastal Transp. Co. v.
Crown Cent. Petroleum Corp., 136 S.W.3d 227, 234 (Tex. 2004).  If we determine that any conflicting evidence
of probative value raises a material fact issue on any theory of recovery, then
the directed verdict is improper because such an issue is for the jury to
resolve.  Szczepanik v.
First S. Trust Co., 883
S.W.2d 648, 649 (Tex. 1994).

          Gaston pleaded a negligent activity
claim against Appellee.  On appeal,
Gaston challenges the directed verdict by asserting that Appellee’s
negligent activity was permitting “demolition activities at the job site while
a roofing contractor was working in the same area using extremely flammable
adhesives” on the roof of the switch gear housing building.  Recovery on a negligent activity theory
requires the plaintiff to have been injured by or as a contemporaneous result
of the activity itself, rather than by a condition created by the
activity.  Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992) (citing Redinger v. Living, Inc., 689 S.W.2d 415, 417
(Tex. 1985)).  If the injury was caused
by a condition created by the activity rather than the activity itself, a
plaintiff is limited to a premises liability theory of recovery.  See, e.g., Crooks v. Moses,
138 S.W.3d 629, 639 (Tex. App.––Dallas 2004, no pet.).

          The Texas Supreme Court has recognized
that a negligent activity cause of action encompasses a malfeasance theory
based on affirmative, contemporaneous conduct by the landowner (or person in
charge of the property) that caused the injury as opposed to a premises
liability cause of action that encompasses a nonfeasance theory based on the
owner’s failure to take measures to make the property safe.  Del Lago Partners, Inc. v. Smith, 307
S.W.3d 762, 776 (Tex. 2010).          Negligence in the context of a negligent
activity claim means simply doing or failing to do what a person of ordinary
prudence in the same or similar circumstances would have not done or done.  Timberwalk Apartments, Partners, Inc.
v. Cain, 972 S.W.2d 749, 753 (Tex. 1998).

Giving
Gaston, as the losing party, the benefit of all reasonable inferences created
by the evidence, no evidence was presented at trial that “flammable adhesives”
were utilized in building the roof of the switch gear housing building.  Additionally, Devin testified that neither he
nor the roofing contractors mentioned any risk of fire in their conversations.  Moreover, the record affirmatively reflects
that Devin was told by the roofing contractors to go ahead with the cutting
activities because the switch gear housing building’s roof was almost totally
covered.  Thus, there is simply no
evidence that Appellee engaged in any negligent activity.

Moreover,
Gustine was an experienced welder and cutter. 
He testified that he knew that he needed to be careful every time he
used a cutting torch to not let the sparks fly onto anything.  There is simply no evidence that Gustine’s
and Calhoun’s use of the cutting torch here was any more dangerous or
constituted a negligent activity any more than any other time they used a
cutting torch.

And
finally, Gustine’s injuries were not proximately caused by the negligent
activity he alleged.  Instead, Gustine
was injured when he jumped off the scissor lift that was eighteen feet in the
air and landed on the concrete floor.  The negligent activity Gaston relies upon on
appeal––that “Appellee was negligent in allowing its activities to occur in
close proximity to the roofers using flammable adhesives on the roof”––was not
the proximate cause of Gustine’s injuries; his jumping off the scissors lift
was.[16]

Considering
all the evidence in a light most favorable to Gaston, we hold that the trial
court did not err by granting Appellee’s motion for
directed verdict on Gaston’s claim of negligence because there was no evidence
to support a negligent activity claim.[17]  See Coastal Transp. Co., 136 S.W.3d
at 234–35; Ibarra v. Hines Land Group,
Ltd., No. 10-09-00231-CV, 2010 WL 2869814, at *6 (Tex. App.––Waco July 21,
2010, no pet.) (mem. op.) (holding that plaintiffs could not establish premises
liability under either a premises defect or negligent activity theory).  We therefore overrule the second issue.

V.  Conclusion

          Having overruled both of Appellants’
issues, we affirm the trial court’s judgment.

 

 

SUE
WALKER
JUSTICE

 

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

 

DELIVERED:  January 13, 2011











[1]See Tex. R. App. P. 47.4.





[2]Gustine
Gaston died after suit was filed, and Josie Gaston, as heir of Gustine and on
behalf of his heirs (collectively referred to hereinafter as Gaston) was
substituted in the suit for Gustine.





[3]Appellee had
previously filed a motion for summary judgment and, in the alternative,
no-evidence motion for summary judgment, and the trial court had denied that
motion.





[4]Gustine
did not make a claim for workers’ compensation.





[5]Gustine
testified that Devin’s father (referred to herein as “Mr. Hall”) had told him
to use the scissor lift.





[6]The
job at UTA was the first time that year that he and Gustine had worked for a
company; in the past, Gustine had paid him in cash a portion of whatever Gustine
was paid.





[7]Calhoun
said that he did not know who owned the scissor lift.





[8]Calhoun
said that they did not test the scissor lift afterwards because “it was burnt,
burnt up.”





[9]Calhoun
said that he never saw fire on Gustine; he just heard about it later.





[10]Devin
testified that Appellee had never done any work related to roofing.





[11]Devin
testified that Appellee does not own any cutting or torching equipment or a
scissor lift.





[12]Devin
testified that he never discussed putting Gustine on the payroll.





[13]Devin
testified that the power saw had not been used since 3:00 p.m.





[14]Calhoun did not
challenge in the trial court, and does not challenge on appeal, the conclusion
that Appellee had workers’ compensation insurance that would have covered him
had the TWCC determined that he had suffered a compensable injury or the fact
that he had filed a claim for benefits under the TWCA.





[15]Appellee’s second partial motion for summary judgment also asserted
res judicata as a ground for summary judgment.  We alternatively hold that it  was entitled to summary judgment on
Calhoun’s negligence based on res judicata.  See Igal v. Brightstar Info. Tech.
Group, Inc., 250 S.W.3d 78, 93 (Tex. 2008) (holding that the doctrine of
res judicata bars a plaintiff from pursuing relief in
a court of law after obtaining a final decision in TWCC for the same
transaction).





[16]Devin
testified that Appellee did not own the scissors lift and this testimony is not
controverted.





[17]To
the extent that Gaston’s pleadings may be construed as stating a premises
liability claim, Gaston did not urge on appeal any error by the trial court in
granting a directed verdict concerning that claim.