

# NUMBER 13-20-00397-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TROY CROWNOVER,                                                    Appellant,

v.

PAA CONSULTING, LLC,                                               Appellee.

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Hinojosa, Tijerina, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Troy Crownover filed suit against his employer and multiple contractors for a personal injury sustained while working on a job site. Appellee PAA Consulting, LLC (PAA) moved for traditional and no-evidence summary judgment attacking the elements of duty and breach in a negligence claim. The trial court granted PAA's motion for traditional summary judgment, concluding PAA did not owe Crownover a duty as a matter

of law. By what we construe as a single issue, Crownover argues that the trial court erred by granting PAA's motion for summary judgment. We affirm.

## I. BACKGROUND

### A. Pleadings and Motions

According to Crownover's first amended petition, he was working for 1st Choice Henderson Holdings, Inc., d/b/a Henderson AC (Henderson AC) on October 11, 2016, at a Corner Store in Corpus Christi, Texas. Crownover alleged that the property owner employed PAA, as well as John Magninat, d/b/a HVAC Commercial Contractors (Commercial Contractors), and Classic Services, LLC[1] "as general contractors to coordinate and control construction and renovation operations on the Property."

Crownover alleged that he was assigned to remove and replace overhead ventilation ducts, which required him to utilize an extension ladder. While removing the ducts, Crownover fell off the ladder and suffered "serious and permanent bodily injuries." Crownover brought a negligence claim against PAA, Commercial Contractors, and Classic Services, and a gross negligence claim against Henderson AC.

PAA filed a combined traditional and no-evidence motion for summary judgment, attacking the elements of duty and breach. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (setting out the elements for a negligence claim as: (1) duty; (2) breach; and (3) damages proximately caused by the breach).

In support of its traditional motion for summary judgment, PAA attached six exhibits: (1) Crownover's first amended petition; (2) "Affidavit of Paul Sanchez, with

---

[1] Henderson AC, Commercial Contractors, and Classic Services are all parties to the suit but none are parties to the appeal.

attached Installation Agreement between PAA Consulting and CaptiveAire";
(3) "[Crownover]'s Responses and Objections to [PAA's] Interrogatories to [Crownover]";
(4) Crownover's deposition transcript; (5) Justin Lyles's deposition transcript; and
(6) Leonard Suarez's deposition transcript.[2]

## B.     Summary Judgment Evidence

### 1.     Henderson AC Depositions

During his deposition, Ted Henderson, owner of Henderson AC, confirmed that Crownover was employed by Henderson AC. According to Henderson, he received a call the morning of the accident to install twelve register grills.[3] Along with Henderson and Crownover, two additional Henderson AC employees went to the job site: Lyles and Suarez. Upon arriving at the work site, Henderson was provided a modified scope of work, which included removing the existing ductwork. Henderson could not recall who called him out to the job site nor who changed the scope of work upon arrival, only that he was being subcontracted by another subcontractor.

Henderson explained that after receiving the modified scope of work order, which included "a couple of things," "[he] assessed the situation [as] best [as he] could and said, 'Okay. Well, let's start taking this stuff down, and I'll start looking at the plans to see what we need to do.'" Afterwards, his employees went to Henderson AC's vehicles to get the ladders.

---

[2] PAA's motion for summary judgment set forth that it included Ted Henderson's deposition as an exhibit as well, but the exhibit was not attached to the motion for summary judgment. However, Crownover included excerpts from Henderson's deposition in his response to PAA's motion, and PAA included the deposition in whole in its reply to Crownover's response.

[3] A register grill is an adjustable cover on the outlet of a heating, ventilation, and air condition (HVAC) system that diffuses or diverts air flow from the HVAC system into the room.

Henderson testified that Crownover used an adjustable ladder that was capable of extending up to twenty-six feet, but the ceiling height at the work site was only fourteen feet. Crownover extended the ladder to its full length when he set it up, causing Henderson to tell Crownover: "The ladder is at the wrong angle. You need to fix that." Shortly after Henderson instructed Crownover to fix the ladder, Henderson heard the crash from the accident. Henderson testified that was not the first time he instructed Crownover how to set up that ladder. According to Henderson, Henderson AC had safety harnesses available to his employees if they requested them, but nobody had, including Crownover.

Further, Lyles and Suarez each testified that it was Henderson, not another subcontractor, who gave Crownover the instructions with regard to what work needed to be performed on site. Lyles testified that Crownover set up the ladder himself before using it. Lyles denied hearing Crownover express a concern about using the ladder or requesting a safety harness that day. Suarez similarly testified that Crownover set up his own ladder.

### 2.    Paul Sanchez's Affidavit

According to his affidavit, Paul Sanchez is the owner of and custodian of records for PAA. Sanchez stated that Crownover was not an employee of PAA, and that PAA worked as a subcontractor on the project and had no "authority to hire or control the duties/tasks of other subcontractors." Sanchez further stated that PAA did not give directives to Crownover or otherwise control any aspect of his duties or tasks, and PAA did not perform any work related to the HVAC system that Henderson AC worked on. Attached to Sanchez's affidavit was a scope of work agreement between PAA and

4

CaptiveAire.[4] The agreement included the following relevant safety provision:

> To protect persons and property, [PAA] shall establish a safety program implementing safety measures, policies[,] and standards conforming to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) requirements of this Agreement. [PAA] shall keep project site clean and free from debris resulting from [PAA's] [w]ork.

No other safety requirements or provisions were included in the contract. Further, the contract did not contain any reference to PAA controlling any other subcontractor's work.

### 3.     Crownover's Interrogatory Responses and Deposition

Crownover confirmed that he was employed by Henderson AC at the time of the accident. According to Crownover's deposition testimony, upon arriving at the work site with Henderson AC, an employee of PAA approached Henderson and told him their scope of work would include removing existing ductwork for the HVAC system. Crownover testified that after the PAA employee instructed Henderson on the scope of their work "[Henderson] turned to us and said, 'You-all grab the 24-foot extension ladders and the . . . screw gun and you-all start disassembling it.' And then [Henderson] turned to the gentleman from PAA and said, 'Is that okay with you?' And he said, 'Yes. You-all go ahead.'" According to Crownover, both Henderson and the PAA foreman instructed Crownover to utilize the extension ladder through the aforementioned exchange.

Crownover testified that although he had not completed that type of work before and did not know what kind of equipment it required, he asked for a harness and a lift but was not given either. Despite his concern, Crownover followed his coworker's lead and

---

[4] The agreement includes the name "CaptiveAire" and "Captive-Aire Systems, Inc." CaptiveAire is not a party to the suit.

used a ladder "because [he was] just listening to [his] boss." Although Crownover said, "[t]hey told [him] 'no'" when he requested a harness or lift, he again reiterated that "Henderson told [sic] the foreman for PAA if we can grab the 24-foot metal extension ladders off the back of the truck and start taking down the ducts [from] the 24-foot extension ladders." Crownover explained the ladders belonged to Henderson AC and were retrieved from its trucks.

While trying to remove the ductwork, the ladder fell from underneath Crownover, causing him to fall and break his leg. According to Crownover, the injury required multiple surgeries, including skin grafts, and extensive physical therapy. Despite all the treatment, Crownover has been unable to work since the injury.

## C.    Crownover's Response

Crownover filed a timely response to PAA's traditional and no-evidence motion for summary judgment. Crownover attached six exhibits to his response: (1) excerpts from Crownover's deposition transcript; (2) excerpts from Henderson's deposition transcript; (3) excerpts from Suarez's deposition transcript; (4) excerpts from Lyles's deposition transcript; (5) excerpts from PAA foreman Lazarus Flores's deposition transcript; and (6) the installation agreement between CaptiveAire and PAA.[5]

Crownover argued that the evidence showed that PAA exercised "actual control" over Henderson when it changed the scope of work, which created a duty of care for PAA. Crownover further argued that the contract between CaptiveAire and PAA created "a contractual obligation [for PAA] to provide a safety program and implement safety

---

[5] In PAA's reply to Crownover's response, PAA attached the complete deposition of Flores.

measures to protect persons and property at the worksite." According to Crownover a "jury could reasonably find that, if PAA had implemented a reasonable safety program, the program would have addressed fall risks and equipment issues that are the subject of this case." In his deposition, Flores testified that PAA did not have a formal safety program.

## D. Trial Court's Ruling

The trial court granted PAA's traditional motion for summary judgment, finding that PAA "owed no legal duty to [Crownover]," and entered a take-nothing judgment in favor of PAA. By the same order, the trial court severed Crownover's cause against PAA from the remainder of his claims, making it a final, appealable order. This appeal followed.

## II. STANDARD OF REVIEW

"A trial court's ruling on a motion for summary judgment is reviewed de novo." *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). A party who moves for traditional summary judgment "must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a(c)). A defendant who moves for summary judgment need only disprove one essential element of the plaintiff's cause of action to be entitled to summary judgment. *Little v. Tex. Dep't Crim. Just.*, 148 S.W.3d 374, 381 (Tex. 2004).

We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020). "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514

7

S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "The evidence does not create an issue of material fact if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Kia Motors Corp. v. Ruiz,* 432 S.W.3d 865, 875 (Tex. 2014)).

When the trial court explicitly states the grounds on which it is granting summary judgment, such as here, only those grounds stated will be considered on appeal. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993); *see also 301 White Oak Ranch, Ltd. v. Oaks of Trinity Homeowners' Ass'n*, No. 13-14-00383-CV, 2015 WL 5321281, at *2 (Tex. App.—Corpus Christi–Edinburg Sept. 10, 2015, no pet.) (mem. op.).

### III.    APPLICABLE LAW

To prevail on a negligence claim, a plaintiff must prove that: (1) the defendant owed the plaintiff a legal duty; (2) the defendant breached that duty; and (3) plaintiff suffered damages proximately caused by defendant's breach. *Escoto*, 288 S.W.3d at 404. "A duty is a legal obligation that requires a defendant to conform to a certain standard of conduct to protect others against unreasonable risks." *City of Alton v. Sharyland Water Supply Corp.*, 402 S.W.3d 867, 874 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied). "The duty may be imposed by contract or, irrespective of privity of contract, by law." *Id.* at 874–75 (quoting *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 233–34 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)). "The existence of a duty is a question of law for the courts to decide from the essential, undisputed facts surrounding the occurrence in question." *Id.* at 875.

"As a general rule, one who employs an independent contractor has no duty to

ensure that the contractor safely performs its work."[6] *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864–65 (Tex. 2021) (citing *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020)). However, an exception to the general rule exists where "the employer retains some control over the manner in which the contractor performs the work that causes the damage." *Id.* at 865 (quoting *Arredondo*, 612 S.W.3d at 295). The requisite control may be proven by establishing that the contractor "either actually controlled the manner in which the subcontractor performed its work or had a contractual right to do so." *Id.* (citing *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002)). To establish a duty, whether through an actual or contractual right to control the independent contractor, "the 'control must relate to the condition or activity that caused the injury.'" *Id.* (quoting *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997)). The control must be more than the authority to tell an independent contractor what to do in general terms—the control must "extend to the means, methods, or details of the independent contractor's work." *Id.* (cleaned up).

Controlling the overall timing and sequence of work by various subcontractors does not indicate the requisite level of control. *Id.* at 866 (citing *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 450 (Tex. 2009)). Instead, the control must rise to the level of controlling the timing and sequence of a particular independent contractor's employees such that the general may direct the employees to perform what task to complete and at what point in time. *Id.* (citing *Bright*, 89 S.W.3d at 609). Further, "absent a specific

---

[6] The same legal principles govern the duty of a contractor and the duty of a homeowner. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 n.3 (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985)). "A general contractor on a construction site, who is in control of the premises, is charged with the same duty as an owner or occupier." *Redinger*, 689 S.W.2d at 417.

contractual requirement to do so, a general contractor has no affirmative duty to take action upon learning of an independent contractor's employee's unsafe conduct." *Id.* at 868. "[R]equiring compliance with safety procedures does not give rise to a duty to an independent contractor's employees so long as those procedures do not 'unreasonably increase, rather than decrease, the probability and severity of injury.'" *Id.* at 869 (quoting *Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex. 1999) (per curiam)). Similarly, requiring an independent contractor to "observe and promote compliance with federal laws, general safety guidelines, and other standard safety precautions [does] not impose an unqualified duty of care on [a contractor] to ensure that [an independent contractor's] employees [do] nothing unsafe." *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357–58 (Tex. 1998) (per curiam).

"When reviewing a contract, our goal is to determine the parties' true intentions as expressed in the instrument." *Brazos Contractors Dev., Inc. v. Jefferson*, 596 S.W.3d 291, 302 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Words in a contract are given their plain and ordinary meaning, unless the contract specifies or indicates that the parties intended a different meaning. *Id.* (citing *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009)). "We also bear in mind the particular business activity to be served and, when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive." *Id.* (citing *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam)). The contract is considered as a whole, rather than reviewing any one provision in isolation. *Id.*

10

## IV.    ANALYSIS

Crownover argues that PAA's duty to him was established in two ways: (1) PAA exercised actual control when it changed the scope of work upon Henderson AC's arrival and directed Henderson AC to remove the ducts; and (2) PAA "retained contractual control over the safety program for the ductwork that Crownover was performing."

### A.    Actual Control

The sole evidence that PAA retained actual control over Henderson AC and its employees is through Crownover's deposition testimony that a PAA employee instructed Henderson AC to remove the existing ductwork. As the nonmovant, we must construe the evidence in a light most favorable to Crownover. *See Bush*, 601 S.W.3d at 646. According to Crownover, "[t]he change in the scope of work represents clear supervisory control over the order in which the work was done and over the coordinating of work to be performed by subcontractors at the site." We disagree.

Crownover primarily relies on *Redinger v. Living, Inc.* to support his argument that changing the scope of work amounts to actual control such that a duty was created. *See* 689 S.W.2d 415, 418 (Tex. 1985) (adopting RESTATEMENT (SECOND) OF TORTS § 414 (1977)). In *Redinger*, the general contractor instructed a dirt hauling subcontractor to move a pile of dirt previously left in the way by the same subcontractor. *See id.* at 417. While moving the dirt, the subcontractor crushed the finger of another subcontractor; the jury found the general contractor fifty percent negligent. *See id.* The Texas Supreme Court upheld the jury's finding, noting that "[t]here [was] evidence that [the general contractor] retained the power to direct the order in which the work was to be done and to forbid the work [from] being done in a dangerous manner." *See id.* at 418. The Court

11

further noted that the general contractor's foreman "exercised supervisory control by coordinating the work performed by two subcontractors." *See id.*

However, since *Redinger*, the Court has clarified and narrowed what constitutes the requisite degree of control to establish a duty. *See, e.g., Chapa*, 11 S.W.3d at 156 (noting that a general contractor "must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability"); *Mendez*, 967 S.W.2d at 357–58 (holding that requiring compliance with laws and general safety guidelines does not impose an unqualified duty of care); *Hernandez*, 622 S.W.3d at 866–70 (holding that periodic safety inspections, certain safety requirements for subcontractors, and global management of daily schedule and order of work amounted to "general supervisory authority," and was not the degree of control necessary to impose a duty); *Bright*, 89 S.W.3d at 606 (noting that the right to control may be shown "by evidence that the [general contractor] actually exercised control over the *manner* in which the independent contractor's work was performed") (Emphasis added).

Even construing the evidence in a light most favorable to Crownover, there is no evidence that PAA actually controlled the *manner* in which Henderson AC was to complete the assigned work. *See Bright*, 89 S.W.3d at 606. Indeed, by Crownover's own testimony, it was his supervisor, Henderson, who told him to grab the ladder and begin taking down the ductwork. There is no evidence that PAA required Crownover to use a ladder rather than a scissor lift or to complete the work without a harness. *See Hernandez*, 622 S.W.3d at 867 (noting that the general contractor did not provide "instructions on how to do the job" when concluding there was no duty to the independent contractor). Rather, the evidence shows it was Henderson who controlled the order and manner in which the

12

work was to be completed. *See id.*; RESTATEMENT (SECOND) OF TORTS § 414, cmt.c (1977).

Establishing the *scope* of work "is consistent with the typical role of a general contractor" which does not establish a duty of care. *See id.* at 870; *Bright*, 89 S.W.3d at 606. Moreover, even if changing the scope of work amounted to the requisite level of control, there is no evidence that the control exercised related to the condition or activity that caused the injury. *See Hernandez*, 622 S.W.3d at 866. Accordingly, the summary judgment evidence establishes that PAA did not exercise actual control over the manner, methods, or operative detail in which Henderson AC or its employees, including Crownover, completed their work. *See id.* at 868–69; *cf. Morales v. Alcoa World Alumina L.L.C.*, No. 13-17-00101-CV, 2018 WL 2252901, at *9–10 (Tex. App.—Corpus Christi–Edinburg May 17, 2018, pet. denied) (mem. op.) (concluding a duty existed where evidence showed an independent contractor "was required to comply with the specific detailed instructions" of the premises owner).

## B.    Contractual Right to Control

Crownover next argues that PAA had the contractual right to control Henderson AC vis-à-vis PAA's contract with CaptiveAire. Crownover points to the provision in the contract which required PAA to "establish a safety program implementing safety measures, policies and standards" in order "[t]o protect persons and property." The contract specified that the policies and standards must "conform[] to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) requirements of [the] Agreement." The contract did not specify any safety standards except directing PAA to "keep [the] project site clean and free from debris resulting from [PAA's] [w]ork."

Crownover correctly notes that privity of contract is not required to establish a duty to exercise reasonable care over another. *See C & H Nationwide v. Thompson*, 810 S.W.2d 259, 266 (Tex. App.—Houston [1st Dist.] 1991), *rev'd in part on other grounds*, 903 S.W.2d 315 (Tex. 1994). However, "requiring compliance with safety procedures does not give rise to a duty to an independent contractor's employees so long as those procedures do not 'unreasonably increase, rather than decrease, the probability and severity of injury.'" *See Hernandez*, 622 S.W.3d at 869 (quoting *Chapa*, 11 S.W.3d at 156).

The contract did not permit, much less require, PAA to control the manner, methods, or operative detail in which Henderson AC or its employees completed their work. *See* RESTATEMENT (SECOND) OF TORTS § 414, cmt.c (1965); *Redinger*, 689 S.W.2d at 417; *Jefferson*, 596 S.W.3d at 302. Rather, the contract merely required PAA to comply with governmental safety standards and clean debris from the work site that resulted from PAA's own work. The contract did not include any provisions for PAA's right to control or influence any other subcontractor's work. Considering the contract as a whole, PAA was only required to refrain from creating dangerous conditions, not prevent other subcontractors from engaging in unsafe work. *See Jefferson*, 596 S.W.3d at 302. Accordingly, the evidence conclusively establishes that PAA did not have a contractual right to control the manner, methods, or operative details in which Henderson AC or its employees, including Crownover, completed their work. *See Hernandez*, 622 S.W.3d at 869–70 (holding contractual right to control did not exist between contractor and subcontractor where contract required contractor to comply with various safety requirements); *Bright*, 89 S.W.3d at 607; RESTATEMENT (SECOND) OF TORTS § 414, cmt.c

14

(1977); *cf. Jefferson*, 596 S.W.3d at 303 (concluding right to control existed where subcontractor was required to work "under the direction of [the general contractor]").

## C.    Summary

Construing the evidence in a light most favorable to Crownover, we conclude that the evidence establishes that PAA had neither actual nor contractual right to control "the means, methods, or details of [Henderson AC]'s work." *See Hernandez*, 622 S.W.3d at 865. Accordingly, PAA did not owe Crownover a duty of care as a matter of law. *See City of Alton*, 402 S.W.3d at 875; *Hernandez*, 622 S.W.3d at 865. As such, PAA established that it was entitled to summary judgment. *See* TEX. R. CIV. P. 166a(c). Crownover's sole issue is overruled.

## V.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
17th day of March, 2022.