In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00375-CV**
_____

**CHRIS KILBOURNE, Appellant**

**V.**

**OVINTIV EXPLORATION, INC., Appellee**

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 20-06-07162-CV

**MEMORANDUM OPINION**

In four issues, Appellant Chris Kilbourne complains the trial court erred in granting summary judgment for Appellee Ovintiv Exploration, Inc. ("Ovintiv") on Appellant's negligence causes of action. We affirm the trial court's judgment.

PERTINENT BACKGROUND

Kilbourne, a North Dakota citizen, filed suit alleging causes of action for negligence and gross negligence against Ovintiv, a foreign corporation with its principal place of business in Montgomery County, Texas. Kilbourne worked for

1

Foremost Well Service ("Foremost") in North Dakota as a field hand at a drilling site that was owned and controlled by Ovintiv, which allegedly had a "company man" on site who supervised the safety of all operations. Kilbourne alleged that Ovintiv controlled all operations at the wellsite and contracted with Foremost to provide personnel to assist with drilling operations. Kilbourne further alleged that the rig floor at the drilling site was only supported by a single winch and wire and failed to comply with safety standards requiring secondary supporters. Kilbourne was injured when the winch and wire failed, causing the floor to fall to the ground and strike him while he was performing his duties near the wellhead. According to Kilbourne, the incident was caused because Ovintiv negligently exercised its control over the drilling operations and failed to implement and enforce adequate policies and procedures to ensure a safe workplace. Kilbourne alleged Ovintiv breached its duties by failing to: exercise due care in setting the timing and sequencing of all operations; establish adequate policies and procedures for performing operations; ensure the use of adequate and proper equipment; establish adequate site safety rules; and ensure the use of proper means and methods in conducting operations.

In Defendant's First Amended Original Answer, Ovintiv generally denied all Kilbourne's allegations and asserted multiple defenses. Ovintiv filed a Traditional Motion for Summary Judgment and, Alternatively, No-Evidence Motion for Summary Judgement, arguing that it was entitled to summary judgment on

2

Kilbourne's negligence claim pursuant to Chapter 95 of the Texas Civil Practice and Remedies Code because: (1) it neither retained contractual control nor exercised actual control over the operative details of the work Kilbourne and the Foremost crew performed when Kilbourne was injured; and (2) it had no actual knowledge of the condition that purportedly resulted in Kilbourne's injuries. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001-.004 (Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery); *Los Compadres Pescadores, LLC v. Valdez*, 622 S.W.3d 771, 782, 786–88 (Tex. 2021) (discussing Chapter 95). Ovintiv argued that even if Chapter 95 did not apply, Kilbourne's negligence claims still fail because the summary judgment evidence proved Ovintiv did not retain or exercise control over the operative details of the work Kilbourne was performing when the incident occurred, establishing Ovintiv did not owe any duty to Kilbourne as a matter of law. Ovintiv further argued that since it was not liable for negligence, it was also not liable for gross negligence.

Ovintiv's summary judgment evidence includes Plaintiff's First Amended Petition, Affidavits of Michael Cowan and Michael Nemitz; Master Work or Service Contract between Ovintiv and Foremost ("Foremost MSA"); and Excerpts from the Depositions of Nemitz, Kilbourne, Brian O'Toole, Cody Bradford, Nick Renshaw, Dan Huber, and Maison Hlibichuk. In his Affidavit, Cowan, Ovintiv's Corporate Safety Manager when the incident occurred, explained that in January 2017, Ovintiv

3

entered into the Foremost MSA which stated that Foremost would provide a workover rig and experienced crew to perform workover services on the well. Cowan stated that on the day Kilbourne was injured, Foremost was engaged as an independent contractor to perform services for the specific purpose of repairing the well and that the tasks Foremost was performing when Kilbourne was injured were specifically incident to repair of the well. Cowan explained that Ovintiv also contracted with North Plains Consulting ("North Plains") to provide consultants known as "company men" to oversee the day-to-day drilling operations of oil and gas on its behalf, including the well, and North Plains assigned Nemitz. Cowan averred that Ovintiv relied on Nemitz to provide general oversight but did not control the operative details of Nemitz's work.

Cowan also explained that no Ovintiv employee provided any directions or instructions to any Foremost employee regarding the means, manner, or methods of their work on the well, including the way Foremost rose and secured the rig floor when Kilbourne was injured. Cowan stated that prior to the incident, no Ovintiv employee was aware of the manner in which Foremost rose and secured the rig floor. Cowan attached a copy of the Foremost MSA to his Affidavit. The Foremost MSA includes a provision regarding the Independent Contractor Relationship, which states:

> It is expressly understood that Contractor shall perform work or services hereunder as an independent contractor, Company shall exercise no

4

control over Contractor's employees, servants, agents or representatives, nor those of its subcontractor(s), nor the methods or means employed by Contractor in the performance of such work or services, Company being solely interest in the attainment of the desired results.

In his Affidavit, Nemitz averred that North Plains assigned him to be the wellsite consultant. Nemitz explained that Ovintiv did not have any employees at the wellsite when Foremost provided workover services. Nemitz also explained that when the accident occurred, he was not involved in the lifting of the rig floor, and he did not supervise the lifting or securement of the rig floor or provide any direction or instruction to Foremost. Nemitz stated that prior to the incident, he was not aware the rig floor was not properly secured with a safety chain or of any condition that would result in the rig falling. Nemitz further stated that he was never made aware that the Foremost crew was not going to use the safety chain to secure the rig floor.

In his deposition, Nemitz testified Ovintiv was the lease operator of the well, meaning it was responsible for extracting oil at the wellsite. Nemitz explained that if the contractor was not performing the job safely or correctly, he would stop the job and discuss his concerns with the pusher or supervisor, and the supervisor would resolve the issue before commencing work. Nemitz testified that it was Foremost's responsibility to do its work on the rig, and Foremost owner O'Toole supervised the work Foremost was performing when Kilbourne was injured. Nemitz explained that the Dropped Object Prevention Practice program (DROPS) was not fully

5

implemented when Kilbourne was injured, but Foremost had the equipment it needed to be compliant.

Nemitz testified about the Job Safety Analysis (JSA) completed on the day of the incident, and he explained he was in his truck talking to O'Toole when the incident occurred. Nemitz testified that the investigation indicated the safety chain securing the rig floor was not in place when the rig floor fell on Kilbourne. Nemitz explained that the rig floor would not have fell if the safety chain had been attached to the floor. Nemitz further explained that while he did not see Foremost handle the floor before the incident, Foremost had all the proper equipment it needed to perform the job safely, but failed to utilize it.

Kilbourne testified in his deposition that Ovintiv hired Foremost to provide a workover rig and the required personnel. Kilbourne testified that Ovintiv's company man never provided him with any specific instructions on how to perform his job. Kilbourne explained that he only received instructions from his Foremost co-workers. Kilbourne further explained that the Foremost operator told him the company man wanted the rig floor raised, and if the company man observed the operator performing in an unsafe or incorrect manner, he would tell the operator he was not doing it correctly. Kilbourne testified that if the work was being done safely, he would not expect the company man to provide any instructions.

6

In his deposition, O'Toole testified he owned the rig that was used the day the incident occurred, and Nemitz was the company man. O'Toole explained it was Foremost's regular practice to secure the rig floor with one mechanism, the safety chain. O'Toole testified that he believed he was standing outside talking to Nemitz when the incident occurred. O'Toole explained Foremost was an independent contractor, and the Foremost MSA provided that Ovintiv shall exercise no control over Foremost's employees or its methods or means in performing its work. O'Toole further testified that the Foremost MSA is very common because Foremost is expected to know how to perform the work. O'Toole further explained that his employees should look solely towards him to provide directions about how to perform the job. O'Toole testified that Foremost is responsible for training its employees, and he does not expect Ovintiv to provide any training.

O'Toole also testified that Nemitz did not supervise any aspect of raising or securing the rig floor. O'Toole explained that he did not expect Nemitz to inspect Foremost's equipment, and when the incident occurred, he and Nemitz were unable to see that the chain was not in use because they were standing 150 to 200 feet away on the other side of the rig. O'Toole testified that it was Renshaw's responsibility to engage the safety chain, and Bradford's responsibility to verify Renshaw had properly installed the safety chain. O'Toole testified that Renshaw and Bradford admitted they forgot to engage the safety chain.

Renshaw testified he was working as a derrick hand for Foremost when the incident occurred. Renshaw explained it was his job to attach the safety chain. Renshaw testified that Ovintiv did not have a workover rig and crew and it needed Foremost to provide the rig and personnel to repair the well. Renshaw explained that raising and securing the rig floor was exclusively a Foremost task, and it was Foremost's standard practice to use a safety chain. Renshaw further explained that the safety chain was not in place when the rig floor fell, because they forgot. Renshaw testified Nemitz never instructed him about how to lift and secure the rig floor or about any other job task. Renshaw also testified Nemitz was one hundred feet away when the incident occurred and was not supervising the task.

Bradford testified that prior to the incident, Nemitz and O'Toole were sitting in their trucks about one hundred feet away. Bradford testified that Renshaw asked him to come down on the winch, and when he did, the floor fell and hit Kilbourne. Bradford explained that the safety chain was not in place when the incident occurred, and it was his responsibility to check that Renshaw had put it on. Bradford testified it was not Nemitz's responsibility to secure the rig floor with a safety chain, instruct the Foremost crew on how to raise and secure the rig floor, supervise the crew's tasks, or verify the crew properly and safely secured the rig floor. Bradford further testified that the safety chain was not put in place due to a lack of communication between the Foremost employees.

8

Huber, Ovintiv's Safety Specialist, testified that he investigated the accident and determined the rig was compliant. Huber explained that a company man is responsible for the general oversight of the location and ensures the work is properly done to Ovintiv's specifications. Huber testified that when the accident occurred, Ovintiv did not have any employees on location. Huber testified that the safety chain was not in place when the accident occurred, but it was available for the Foremost crew, and had they used it, the accident would not have occurred. Former Foremost employee Hlibichuk testified that on the day the incident occurred, Nemitz never gave him instructions about how to perform his job or provided any job training. Hlibichuk testified it is common practice to use a safety chain, and they should have used one.

Ovintiv contends the summary judgment evidence shows Nemitz did not direct, instruct, or supervise the Foremost crew in the lifting or securing of the rig floor, and there was no evidence showing Nemitz was aware that the safety chain was not engaged. Ovintiv argued Chapter 95 of the Texas Civil Practice and Remedies Code bars Kilbourne's negligence claim because a property owner is not liable for the personal injury to an employee of a contractor who constructs, repairs, renovates, or modifies an improvement to real property unless (1) the property owner exercised or retains some control over the manner in which the work is performed, and (2) had actual knowledge of the danger or condition resulting in the personal

9

injury and failed to adequately warn. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001-.004; *Abutaboun v. Dow Chem. Co.*, 463 S.W.3d 42, 48 (Tex. 2015).

Ovintiv further argued that the evidence, including the Foremost MSA, shows Foremost is an independent contractor and that Ovintiv did not retain contractual control of the operative details of the work performed by Foremost's crew when Kilbourne was injured. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 607 (Tex. 2002) (stating a contract may impose control upon a party and thereby create a duty of care); *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Ovintiv maintained that based on the clear and unambiguous terms in the Foremost MSA showing that it did not retain any contractual control and the undisputed facts showing that Nemitz did not exercise control over the operative details of Foremost's crew when the incident occurred and was unaware the rig floor was not properly secured, it can be determined as a matter of law that Ovintiv did not retain any contractual control.

Ovintiv contended that since Kilbourne presented no evidence on the essential elements of both control and actual knowledge exceptions under Chapter 95, Kilbourne failed to prove his common law negligent activity claim alleging that Ovintiv negligently exercised control over the drilling operations and failed to exercise due care and establish adequate policies, procedures, and safety rules. Ovintiv further argued that Kilbourne presented no evidence establishing his gross

10

negligence claim. Ovintiv alternatively argued that even if Chapter 95 does not apply, Kilbourne's common law negligence claims still fail because it did not exercise actual control over the operative details of the work being performed when Kilbourne was injured and thus did not owe any duty to Kilbourne to ensure that the work was performed in a safe manner.

Kilbourne filed a Response to Ovintiv's motions for summary judgment, arguing that he worked for Foremost and was under Nemitz's supervision. Kilbourne argued Ovintiv and Nemitz failed to do their job and implement a DROPS program to prevent the risk to workers related to dropped objects like the platform at issue. Kilbourne explained that the DROPS program obligated Nemitz to ensure contractors were conducting their work in accordance with DROPS's requirements by using adequate primary and secondary retention, establishing restricted-access zones, and identifying and discussing drop hazards in safety meetings. Kilbourne argued Nemitz ignored DROPS and the drop danger Ovintiv knew it needed to address at worksites and failed to (1) identify or discuss the drop danger on the day the incident occurred, (2) ensure implementation of restricted-zone access when the platform was raised, and (3) correct the defective primary and secondary retention mechanisms that secured the platform. Kilbourne further argued that Nemitz's failure to implement DROPS resulted in the platform falling.

11

Kilbourne explained that Chapter 95 did not apply, and Ovintiv's motions for summary judgment should be denied because it did not present any grounds for summary judgment under North Dakota law, which Kilbourne argued governed his claims since North Dakota was the state with the "most significant relationship." Kilbourne explained that North Dakota law should apply because (1) Kilbourne's injuries occurred at a work site in North Dakota; (2) Ovintiv planned and supervised the work from offices in North Dakota; (3) Nemitz's negligent acts occurred in North Dakota; (4) Kilbourne is a citizen of North Dakota; and (5) the relationship of the parties was centered in North Dakota. Kilbourne also explained that Texas and North Dakota had both adopted Section 414 of the Restatement of Torts to determine when an employer owes a duty of care to the employees of an independent contractor, and under Section 414 a duty arises if the employer of the contractor or landowner retains any control over any part of the work. *See Redinger v. Living, Inc.*, 689 S.W.2d 415, 417–18 (Tex. 1985); *see also* Restatement (Second) of Torts § 414 (1977). However, Kilbourne noted that Texas modified Section 414 through Chapter 95, requiring a landowner to also have actual knowledge of the danger or condition resulting in the injury and fail to warn. *See* Tex. Civ. Prac. & Rem. Code Ann. § 95.003.

Kilbourne argued that even if Texas law and Chapter 95 applied, his summary judgment evidence shows Ovintiv exercised significant control over Foremost's work, including the timing, sequence, and manner of the work through its company

men, and he argued that a jury could find Ovintiv had actual knowledge of the dangerous on-site condition. *See Valdez*, 622 S.W.3d at 781. Kilbourne further argued Ovintiv negligently exercised its control by using open-ended hooks that violated DROPS, failing to conduct an adequate JSA to identify and mitigate the hazards before lifting the platform, and failing to establish a restricted-access zone. Kilbourne also argued that the language in the Foremost MSA purportedly disclaiming Ovintiv's control over Kilbourne and Foremost did not independently support summary judgment because the duty created by Section 414 may arise by the employer's actual exercise of retained control of the work. Kilbourne contends that Ovintiv was vicariously liable for Nemitz's conduct, including his alleged grossly negligent conduct, and there is ample evidence of breach, causation, and injury. *See id*.

Kilbourne's summary judgment evidence includes, among other things, the deposition transcripts of Kilbourne, Huber, O'Toole, Bradford, Hlibichuk, Cowan, Nemitz, and Renshaw; Harold E. McGowen III Declaration and Expert Report; Benjamin G. Gibson Declaration and Expert Report; Newfield Safety Manual; emails from Huber to Ovintiv's safety personnel and company men; JSA; Ovintiv Operations Alert; Witness Statements; Nemitz email; Incident Report; and photos.

Kilbourne testified in his deposition that Kilbourne's company man did not directly give him any instructions. Kilbourne testified that it was "probably

correct[]" that the company man was not supervising the operation when the accident occurred and that "[t]echnically[,]" he only received instructions from his Foremost coworkers. Kilbourne testified he normally got orders from the Foremost operator, who gets his instructions from the company man.

Huber testified that the goal of the DROPS program was to prevent overhead objects from falling onto workers. Huber investigated the incident and prepared a report, and he explained that an open hook was used to keep the floor in a vertical position while the winch line was under tension, but the best practice was to use a closed or secure hook. Huber further explained that the safety retention chain was available to the Foremost crew, but they did not use it. Huber testified that five days prior to the accident he sent an email to the company men and leaders asking them to implement the DROPS program as soon as possible, which required primary and secondary securing mechanisms, but he did not expect the program to be fully implemented within five days. Huber testified that the Ovintiv supervisor is responsible for ensuring the equipment is available, but it is the responsibility of the rig personnel to follow the rules and use the equipment. Huber explained that after the incident he required the hooks to have backs. Huber also explained the JSA completed the day of the incident was inadequate because it did not address the safety hazards, and as the company man, Nemitz should have made sure the JSA was completed correctly. Huber testified that the company man does not have

14

authority to give directions and instructions to employees of service contractors regarding how to perform their job tasks. Huber testified the incident would not have occurred if the Foremost crew had used the safety chain, and the responsibility of using secondary retention is not on the company man.

O'Toole testified Nemitz was the company man when the incident occurred. O'Toole explained that Foremost has an independent contractor relationship with Ovintiv, and his employees look solely to him to provide directions and training on how to perform their tasks. O'Toole testified he was not aware of Nemitz providing any directions or instructions to the Foremost crew on the day the incident occurred, and Nemitz did not supervise the tasks involved in raising and securing the rig floor. O'Toole further testified that Nemitz was not aware the safety chain was not engaged.

Bradford testified Nemitz was Ovintiv's company man when the incident occurred. Bradford testified it was not Nemitz's responsibility to secure the safety chain, and Nemitz did not instruct the Foremost crew about how to raise and secure the rig floor. Bradford testified that nobody put the safety chain on, and he explained that it was his responsibility to check that Renshaw secured the safety chain.

Hlibichuk testified that when the incident occurred, O'Toole was watching the work site from his truck and Nemitz was probably parked in the same area. Hlibichuk explained it was standard practice to use a safety chain to prevent the rig

15

floor from falling, and that when the floor fell, he knew the safety chain had not been attached. Hlibichuk testified that Nemitz did not give any specific directions or instructions about the job or securing and raising the rig floor or have any responsibility to engage the safety chain, and he did not rely on Nemitz to provide any training. In his Incident Statement, Hlibichuk stated that "we didn't have our safety chain attached to hold the floor back."

Cowan, Ovintiv's corporate representative and Director of Environmental Health and Safety for the Anadarko and Rockies operating area, testified he received a post incident report and operational alert regarding the incident. Cowan testified Nemitz was Ovintiv's company man when the incident occurred. Cowan explained Nemitz was required to hold a pre-job safety meeting, and if he identified a hazard or determined the work procedure was improper, he could stop the work and recommend that the contractors perform the work in a different manner. Cowan also explained that as a company man, it was Nemitz's responsibility to ensure compliance with the DROPS program, including its requirement to secure with secondary retention, and Nemitz's job was to make sure secondary retentions were in place where required to mitigate the risk of dropped objects. Cowan testified he did not know if Nemitz had received the information regarding the DROPS program before the incident occurred, but he believed secondary measures for securing the rig floor were in place, which included a safety chain.

16

Nemitz testified that as a company man he serves as Ovintiv's consultant and instructs contractors about what Ovintiv wants done on the job. Nemitz testified that his job is to make sure contractors follow Ovintiv's safety rules, perform activities in an efficient manner, and to stop the job if he sees something unsafe. Nemitz explained Ovintiv had not fully implemented the DROPS program when the incident occurred, but Foremost's crew had everything they needed to be compliant. Nemitz also explained that Foremost's pusher supervised the work Foremost's crew performed on the rig, and Foremost's supervisor was responsible for the work it performed.

Nemitz testified that he was in his truck when the incident occurred. Nemitz explained the safety chain was not secured to the rig floor when the floor fell, and the floor would not have been able to fall if the safety chain had been applied. Nemitz also explained there were positive latch hooks on the winch line that the Foremost crew could have used instead of the open face hook. Nemitz testified he did not see the Foremost crew handle the floor before the incident, and they failed to utilize all their proper equipment that was in place.

Renshaw testified the company man participated in safety meetings and explained the job scope but not how to do the job. Renshaw testified Nemitz was sitting in his truck approximately 150 feet away when the incident occurred. Renshaw explained that the raising and securement of the rig floor was a Foremost

17

task, and he did not know if Nemitz saw that the rig floor was secured with the winch line and an open hook. Renshaw testified he did not rely on Nemitz to provide training or to verify that the Foremost crew properly secured the rig floor, and Nemitz did not provide any specific instructions on how to do the job. Renshaw further explained his job role in lifting the rig floor was to put the safety chain on, which was Foremost's standard operating procedure, but they forgot to do it. Renshaw testified that the rig floor would not have fallen if the safety chain had been in place.

Harold E. McGowen III, a Mechanical and Petroleum Engineer, issued an expert report finding that Nemitz's "failure to perform a rigorous hazard identification (e.g., causing a DROP Inspection to occur and/or causing establishment of a no-go Danger Zone) contributed to the subject incident." McGowen opined that Nemitz should have performed an ad hoc DROPS inspection prior to the work being performed and required Foremost to implement both a primary and secondary or back-up method of drop protection. McGowen opined that Nemitz should have required Foremost to perform a Hazard Identification and requested the Foremost tool-pusher to take steps that none of the workers would be under the floor when it was lowered. McGowen concluded that the subject incident would, more likely than not, never have occurred had Nemitz taken the steps to be

proactive in providing onsite supervision committed to implementing prudent operational practices.

Benjamin G. Gibson, an expert in workplace safety and project management, issued an expert report, finding that inadequate pre-job planning was a major contributor to Kilbourne's injury and that efforts were not made to discuss the floor raising activity and identify and mitigate the risks involved. Gibson opined that Ovintiv was ultimately responsible for the safety of the site and the company man participated in the JSA and should have been aware that activities were taking place that were not discussed during the pre-job meeting. Gibson opined that if Nemitz had stopped the job and Ovintiv and Nemitz had implemented a DROPS program it is very likely that the incident would have been prevented, and Kilbourne suffered injuries as a direct result of Ovintiv's failures. Gibson also opined that if Nemitz had taken more care in monitoring the safety of all workers on site, it is possible Kilbourne's injuries could have been prevented. Gibson opined that Nemitz had not been properly trained and informed as to his responsibilities as the company man, including his responsibility for site safety. Gibson concluded that Kilbourne's injuries resulted from Ovintiv's failure to ensure work was being done in accordance with standards within their own policies and procedures.

Ovintiv filed a Reply to Kilbourne's Response, withdrawing its argument that Chapter 95 applied since Kilbourne asserted that North Dakota law applied and there

19

was a conflict between Chapter 95 and North Dakota common law. Ovintiv argued that since Kilbourne conceded that Texas and North Dakota common law are identical regarding the duty principals owed to the employees of their independent contractor, Texas law controlled because there is no conflict regarding duty. Ovintiv further argued that even if North Dakota law applied, it was still entitled to summary judgment because it moved for summary judgment on a lack of duty because Ovintiv did not exercise actual control over the operative details of the work conducted by the Foremost crew when Kilbourne was injured, which was a valid ground under North Dakota law. The trial court granted Ovintiv's Traditional and No Evidence Motions for Summary Judgement.

ANALYSIS

In four issues, Kilbourne argues the trial court erred in granting summary judgment to Ovintiv on his negligence causes of action because: (1) North Dakota law governs his lawsuit; (2) Ovintiv failed to move for summary judgment under North Dakota law; (3) Ovintiv was liable for the work of its independent contractors since it exercised control over the operations at the wellsite; and (4) Ovintiv consciously disregarded a known danger when it required him to do a job in a manner Ovintiv knew was unsafe.

We review rulings on motions for summary judgment using a *de novo* standard. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.

20

2003). The trial court's order granting summary judgment does not specify the basis for the ruling; thus, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

In resolving Kilbourne's issues, we consider the ruling on the no-evidence part of Ovintiv's hybrid motion for summary judgment before considering the ruling on the traditional portion of its motion. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). In reviewing a no-evidence motion, we must view the evidence in the light most favorable to the non-movant. *Id.* at 601. The Texas Supreme Court has explained that the trial court must grant a no evidence motion if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively established the opposite of the vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Because a trial court's decision granting a no evidence motion for summary judgment is essentially a pretrial directed verdict, the same legal sufficiency standard is used in reviewing rulings made by trial courts on motions for directed verdicts. *Id.* at 750–51. "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ridgway*, 135 S.W.3d at 600

21

(citation omitted). "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983) (citations omitted).

"If the non-movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails." *First United Pentecostal Church of Beaumont, d/b/a The Anchor of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citation omitted). A party moving for traditional summary judgment meets its burden by proving that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

In issues one and two, Kilbourne argues the trial court erred in granting summary judgment to Ovintiv on his negligence causes of action because North Dakota law governs his lawsuit and Ovintiv failed to move for summary judgment under North Dakota law. Ovintiv argues that it alternatively moved for a no-evidence summary judgment based on a lack of common law duty, and in Kilbourne's Response, he argued that North Dakota law applied and that North Dakota and Texas had both adopted Section 414 of the Restatement and applied the same right-to-control test common to both states. *See Redinger*, 689 S.W.2d at 417–18; Restatement (Second) of Torts § 414. In its reply, Ovintiv argued that since there is

22

no conflict in the Texas and North Dakota common law, Texas law prevails. On appeal, Ovintiv argues that regardless of which state law applies, Kilbourne's evidence did not create a fact issue regarding the issue of control under Section 414 of the Restatement.

The issue of which state's law applies is a question of law we resolve by reviewing the trial court's decision to apply Texas law in this case de novo. *Minn. Mining & Mfg. Co. v. Nishika Ltd*, 955 S.W.2d 853, 856 (Tex. 1996) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984), *overruled by statute on other grounds*). Texas courts presume that Texas law applies and can also presume that the determinative law of another state is the same as Texas law absent proof or argument to the contrary. *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 685 (Tex. 2006); *Grizzly Mountain Aviation Inc. v. Honeywell Int'l, Inc.*, No. 13-11-00676-CV, 2013 WL 5676069, at *2 (Tex. App.—Corpus Christi Oct. 17, 2013, no pet.) (mem. op.). The first question in conducting a choice-of-law analysis is whether there is any conflict between the substantive law of the states, as there can be no harm in applying Texas law if there is no conflict. *Compaq Comput. Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004); *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 260 (Tex. App.—San Antonio 1999, pet. denied); *BDO Seidman, LLP v. Bracewell & Patterson, LLP*, No. 05-02-00636-CV, 2003 WL 124829, at *1 (Tex. App.—Dallas Jan. 16, 2003, pet. denied) (mem. op.). If we determine there is a conflict in the laws,

23

we then decide the appropriate law to apply by using the Restatement (Second) of Conflicts of Law. *Am. Nat'l Ins. Co. v. Conestoga Settlement Tr.*, 442 S.W.3d 589, 593 (Tex. App.—San Antonio 2014, pet. denied); *see* Restatement (Second) of Conflicts of Laws §§ 6, 145 (Am. Law Inst. 1971).

On appeal, both parties agree that Texas and North Dakota adopted Section 414 of the Restatement (Second) of Torts to determine the common law duty of control. In its Reply in support of its Motions for Summary Judgment, Ovintiv argued that since Kilbourne's Response asserted for the first time that North Dakota law applies, Ovintiv withdrew its argument that Chapter 95 applied because there is a conflict between Chapter 95 and North Dakota common law, but Ovintiv argued it was still entitled to summary judgment on a lack of duty because it moved for summary judgment on that issue and there is no conflict between Texas and North Dakota common law. We note that Kilbourne's pleadings do not assert that North Dakota law applies, and he did not ask the trial court to take judicial notice of North Dakota law. *See* Tex. R. Evid. 202. Since there appears to be no conflict between Texas and North Dakota law applicable to Kilbourne's common law negligence claims, there can be no harm in applying Texas law. *See Lapray*, 135 S.W.3d at 672. Having determined there is no conflict of common law presented, we need not decide which state's law applies because the outcome of the case would be no different. *See id.* at 672; *Duncan*, 665 S.W.2d at 419; *Young Ref. Corp. v. Pennzoil Co.*, 46 S.W.3d

24

380, 385 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). We overrule issues one and two.

In issues three and four, Kilbourne argues the trial court erred in granting summary judgment on his negligence and gross negligence claims. Kilbourne argues Ovintiv was liable for the work of its independent contractors since it exercised control over the operations at the wellsite, and Ovintiv consciously disregarded a known danger when it required him to do a job in a manner Ovintiv knew was unsafe.

To prevail on a negligence claim, a plaintiff must prove three elements: (1) legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately caused by the breach. *Kroger v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). "The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995) (citations omitted). To establish liability in tort, the plaintiff must establish the defendant both owed and violated a duty to the plaintiff. *Id.* Whether a legal duty exists is a question of law for the court to decide based on the particular facts surrounding the occurrence in question. *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 459 (Tex. App.—Dallas 2007, pet. denied). To recover on a claim for gross negligence, the plaintiff must prove two elements: (1) viewed objectively from the standpoint of the defendant at the time of the occurrence, the defendant's act or omission involved an extreme degree of risk considering the probability and

25

magnitude of the potential harm to others; and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Kilbourne's gross negligence claim is based on the same acts or omissions underlying his negligence claim.

To prevail on his claim based on a theory of negligent activity, Kilbourne must prove (1) Ovintiv owed Kilbourne a duty to exercise reasonable care in supervising Kilbourne's activity; (2) Ovintiv breached that duty; and (3) Ovintiv's breach proximately caused Kilbourne's harm. *See Redinger*, 689 S.W.2d 418. Additionally, since Kilbourne was an employee of Ovintiv's independent contractor, Kilbourne must prove that Ovintiv exercised control over the operative details of the work Kilbourne performed when the accident occurred. *See Bright*, 89 S.W.3d at 606; *Jones*, 214 S.W.3d at 700.

Generally, an owner of a premises does not have a duty to see that an independent contractor performs work in a safe manner. *Redinger*, 689 S.W.2d at 418 (citing *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex. 1976)). However, when an owner of a premises exercises some control of an independent contractor's work, the owner may be liable unless it exercises reasonable care in supervising the

26

independent contractor's activity. *Id.* Texas has adopted Section 414 of the Restatement (Second) of Torts, which states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414. Section 414 applies when the premises owner retains some control over the manner in which the independent contractor's work is performed, and that control must include more than a general right to order the work to start or stop, inspect progress, or receive reports. *Id.*, comments a, c (Am. Law Inst. 1965).

"'[M]erely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability.'" *Bright*, 89 S.W.3d at 607 (citation omitted). Kilbourne argues that Ovintiv negligently failed to exercise its retained right of control over the safety functions that could have prevented the accident, such as performing a proper JSA and ensuring that Foremost used proper secondary retention; however, the Texas Supreme Court rejected a similar argument *in Koch Refining Company v. Chapa*, and concluded that testimony showing a safety representative was present and could have possibly intervened and prevented the independent contractor from lifting a pipe in a dangerous manner was not evidence

27

that Koch exercised the degree of control necessary to create a duty. 11 S.W.3d 153, 156 (Tex. 1999). The *Koch* Court concluded that whether Koch owed Chapa a section 414 duty depended on whether Koch contractually retained or actually exercised a right of supervision such that the independent contractor was not entirely free to do the work on its own. *See id.* at 155–56. The *Koch* Court explained that requiring an independent contractor to observe standard safety guidelines and precautions did not impose an unqualified duty of care on a premises owner to ensure that an independent contractor does not do anything unsafe; rather, at most, it imposed a duty that any safety requirements and procedures that it promulgated did not unreasonably increase the probability and severity of injury. *See id.* at 156.

The MSA did not provide Ovintiv with any contractual rights to exercise authority over the methods and means by which Foremost performed its work, and the summary judgment evidence shows that Ovintiv and Nemitz did not actually exercise control over the work the Foremost crew and Kilbourne were performing when Kilbourne was injured. The summary judgment evidence established that Foremost instructed its crew and Kilbourne regarding their duties and neither Ovintiv nor Nemitz instructed the Foremost crew or Kilbourne on how to perform their job duties or were involved in the decision as to how and when to secure the rig floor that fell on Kilbourne. After reviewing the summary judgment evidence, we conclude there is no evidence Foremost and Kilbourne were not free to do the

28

work in their own way or that Ovintiv exercised some control over the manner in which Foremost performed its work. *See* Restatement (Second) of Torts § 414; *Bright*, 89 S.W.3d at 607; *Koch Ref. Co.*, 11 S.W.3d at 155–56; *Redinger*, 689 S.W.2d at 418.

Accordingly, we conclude that the trial court did not err in granting summary judgment in Ovintiv's favor on Kilbourne's negligence claims because Kilbourne failed to produce more than a scintilla of evidence showing Ovintiv had some control over the manner in which Foremost's work was performed that would establish the existence of a legal duty. *See Kroger*, 197 S.W.3d at 794; *Kindred*, 650 S.W.2d at 63. Since we have concluded the trial court did not err in granting Ovintiv's No-Evidence Motion for Summary Judgment, we need not address Kilbourne's arguments regarding the traditional summary judgment grounds. *See* Tex. R. App. P. 47.1. We overrule issues three and four. Having overruled all of Kilbourne's issues, we affirm the trial court's judgment.

AFFIRMED.

 

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on November 17, 2022
Opinion Delivered February 9, 2023

Before Golemon, C.J., Johnson and Wright, JJ.

29